UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA

                -against-

SEAN PRICE,

                Defendant.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CR-301 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Sean Price is charged with one count of interstate and foreign enticement to engage in illegal sexual activity, one count of interstate and foreign transportation of a minor to engage in illegal sexual activity, one count of interstate and foreign transportation of an individual to engage in sexual activity, one count of attempted sexual exploitation of a child, one count of receipt of child pornography, and one count of possession of child pornography. (See Indictment (Dkt. 9); Superseding Indictment (Dkt. 23).) Defendant was arrested in connection with these charges at his mother's home in Queens, New York (the "Residence") on May 11, 2017. (Sean Price Aff. in Supp. of Def. Mot. to Suppress ("Sean Price Aff.") (Dkt. 21-1) ¶¶ 2, 4.)

Before the court are Defendant's motion and supplemental motion to suppress evidence he alleged to have been obtained as a result of unconstitutional searches (collectively, "the Motion"). (Def. Mot. to Suppress ("Mot.") (Dkt. 21); Def. Suppl. Mot. to Suppress ("Suppl. Mot.") (Dkt. 33).) For the reasons set forth below, the Motion is DENIED.

## I. BACKGROUND

The following statement of facts is drawn from the indictment, the superseding indictment, and the parties' submissions in connection with this motion.

1

On April 11, 2017, Jane Doe, a sixteen-year-old Australian female, flew from Sydney, Australia, to Los Angeles, California, on a roundtrip ticket. (Gov't Mem. in Opp'n to Mot. to Suppress ("Gov't Opp'n") (Dkt. 35) at 1.) Two weeks later, Doe did not take her return flight home, and ceased communicating with her parents. (Id. at 2.) Doe's parents reported her missing to Australian authorities, and, shortly thereafter, an international search commenced featuring collaboration between Australian officials, Interpol, the New York City Police Department ("NYPD"), and the Department of Homeland Security Investigations's ("HSI") Human Trafficking Unit. (Id.) Shortly thereafter, Australian authorities uncovered that Doe had been engaged in an online relationship with Defendant, a thirty-nine-year-old man, and that Defendant had facilitated Doe's departure from Australia. This was indicated by a $1,400 transfer of funds from Defendant to Doe and a report from a confidential source stating that Doe claimed to be in love with Defendant and had planned to travel and stay with Defendant for several weeks. (Id. at 2-3.) A postage receipt confirmed that Doe had mailed items to Defendant's grandmother's residence in Jamaica, New York. (Id. at 3.) The same source received several communications from Doe, via Snapchat,[1] indicating both that she was likely in Jamaica, New York, and that she may have been harming herself. (Id.)

On May 11, 2017, law enforcement officers from the NYPD and HSI went to the Residence to look for Doe. (Id.) Defendant's mother answered the door and denied that Defendant and Doe were at home; however, law enforcement officers stationed at the rear of the home observed Defendant and Doe attempting to leave the Residence and retreating back inside the Residence upon seeing the officers. (Christopher Davies Aff. in Supp. of an Appl. for a Search Warr. (Dkt. 33-2) ¶7.) Law enforcement officers then entered the Residence without a warrant and found both Defendant and Doe located in the basement. (Id.) Defendant was

---

[1] Snapchat is a social media application that focuses on sharing photos and videos.

2

subsequently placed under arrest on New-York-state-law-based charges, including Rape in the Third Degree and related charges. (Id.)

## II. PROCEDURAL HISTORY

Sometime between 4:00pm and 5:00pm on May 11, 2017, NYPD officers arrested Defendant at the Residence. (Sean Price Aff. at 1.) During that arrest, the Police Officers seized two of Defendant's telephones. (Id. at 2.) Prior to his arrest, Defendant was living in the basement of the Residence with his mother and brother. (Id.) Following his arrest, he was taken to the precinct, where he waived his Miranda rights, made voluntary statements, and signed two forms consenting to a search of his telephones. (Gov't Opp'n at 4.)

On June 6, 2017, a federal grand jury returned a three-count indictment, charging Defendant with interstate and foreign enticement to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(a), interstate and foreign transportation of a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2423(a), and interstate and foreign transportation of an individual to engage in sexual activity, 18 U.S.C. § 2421. (Indictment.)

The Government subsequently obtained three warrants to search Defendant's and Doe's property. On July 17, 2017, Magistrate Judge Steven L. Tiscione granted the Government's application for a search warrant for four Facebook accounts identified as belonging to the Defendant and Doe (the "Facebook Warrant"). (Gov't Opp'n at 4.) On August 4, 2017, Magistrate Judge Lois Bloom granted the Government's application for a search warrant for Snapchat accounts belonging to the Defendant and Doe (the "Snapchat Warrant"). (Id. at 4-5.) On August 15, 2017, Magistrate Judge Viktor V. Pohorelsky granted the Government's application for a search warrant permitting entry into the Residence for the purposes of retrieving electronic devices that were believed to contain child pornography (the "Premises Warrant").

3

(Id. at 5.) The information used to support each of these warrants was supported, in part, by information found on the Defendant's two telephones, which were seized during the initial arrest. (Id.)

On September 5, 2017, a federal grand jury returned a superseding indictment charging Defendant with the offenses alleged above as well as attempted sexual exploitation of a child, receipt of child pornography, and possession of child pornography, in violation of 18 U.S.C. §§ 2251(e), 2252(a)(2) and 2252(a)(4)(b), respectively. (Superseding Indictment.)

## III. DISCUSSION

Defendant now moves to suppress evidence obtained both from the initial, unwarranted entry into the Residence as well as the later, warranted searches. Defendant moves to suppress physical evidence—i.e. two telephones recovered from the basement of the Residence—and post-arrest statements made by Defendant shortly after his arrest. Defendant also moves to suppress evidence derived from the three search warrants. Defendant moves to suppress the evidence from all of these sources on the basis that these items were "fruits" of an illegal arrest, namely Defendant's arrest in the Residence following police officers' warrantless entry. (Def. Mem. in Supp. of Mot. ("Def. Mem.") (Dkt. 21-3); Suppl. Def. Mem. in Supp. of Mot. ("Def. Suppl. Mem.") (Dkt. 33-5).)

Defendant argues that his arrest was illegal because the police officers who entered the Residence had neither a warrant nor consent to enter the premises, and there were neither exigent circumstances nor a need for emergency aid that justified entry. (See Def. Mem. at 3-4.) Therefore, he argues that "seizure of the two telephones in the basement, and the statements made and the consent to search provided at the precinct were 'fruits of the poisonous tree.'" (Id. at 4.) On much the same basis, Defendant maintains that evidence obtained in connection

4

with the Facebook, Snapchat, and Premises Warrants should be suppressed. (See Def. Suppl. Mot.) He contends that these warrants are invalid because they rely, in part, on evidence obtained from the allegedly illegal arrest at the Residence. (Id.) In addition to offering these theories, Defendant also argues that the two telephones, and the evidence obtained through them, is inadmissible because Defendant did not consent to their seizure and they were not sufficiently "suspicious" to permit seizure under the "plain view" doctrine. (Def. Mem. at 4.)

The court concludes that the Motion should be denied and that no further evidentiary hearing is required. Defendant's arguments rest primarily on the premise that the police officers' entry into the Residence was unjustified. The entry into the Residence, however, was lawful under both the exigent-circumstances exception and the emergency-aid exception. Further, even if the two telephones were not sufficiently "suspicious" to permit plain-view seizure, the two telephones, and evidence obtained through them, are admissible under the inevitable discovery doctrine. Moreover, even had the entry not been lawful and even had the inevitable discovery doctrine not applied, the court would deny the Motion because an unlawful entry and an unjustified seizure of the two telephones, in this situation, did not taint the Defendant's post-Miranda statements and consent to search. As a result of these determinations, the evidence obtained from the Facebook, Snapchat, and Premises Warrants is admissible, because these warrants were valid.

The court addresses these points separately below.

### A. Legality of the Initial Entry into the Residence

The Fourth Amendment to the United States Constitution protects individuals against warrantless intrusions into their homes by government officers. U.S. Const. amend. IV. "[T]he Fourth Amendment guarantees an individual the right to be secure against forcible entry of his

house save in exceptional circumstances. . . ." Hurlman v. Rice, 927 F.2d 74, 79 (2d Cir. 1991).

In order to uphold this protection, courts generally exclude evidence obtained through warrantless searches of a criminal defendant's home in the absence of exceptional circumstances. Mapp v. Ohio, 367 U.S. 643 (1961). As suggested by this formulation, however, this general rule is subject to exceptions, two of which are relevant here, namely the "exigent-circumstances" and "emergency-aid" exceptions.

### 1. Exigent-Circumstances Exception

"One well-recognized exception [to the Fourth Amendment's general rule against warrantless entry] applies when 'the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable. . . .'" Kentucky v. King, 563 U.S. 452, 460 (2011) (quoting Mincey v. Arizona, 437 U.S. 385, 394 (1978)). "Although warrantless entries into the home are presumptively unreasonable, warrant requirements must yield when exigent circumstances demand that police act speedily." United States v. Fields, 113 F.3d 313, 322-23 (2d Cir. 1997) (citing Payton v. New York, 445 U.S. 573, 586 (1980); Warden v. Hayden, 387 U.S. 294, 298-99 (1967)).

To determine whether the exigent-circumstances exception applies, the court must ask whether a "reasonable and experienced officer would have had reason to believe that there was an urgent need to act." United States v. Gilliam, No. 11-CR-1083, 2012 WL 4044632, at *2 (S.D.N.Y. Sept. 12, 2012). In making this assessment, the Second Circuit employs a non-exhaustive, six-factor test, under which the court evaluates the "circumstances in their totality." Id. The six factors in this test are:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause . . . to believe that the suspect committed the crime; (4) strong reason to

believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry.

Fields, 113 F.3d at 323.

Although this six-factor test is the controlling as to whether the exigent-circumstances exception applies, some circumstances have consistently been held to be exigent, and so covered by the exception: "[t]he potential sexual exploitation of a minor is an exigent circumstance . . . . [t]herefore, district courts in this circuit have found that police investigating a missing or kidnapped child, particularly when coupled with evidence that the child is being sexually exploited, constitutes an exigency that allows warrantless entry into a home or hotel room where officers have an objectively reasonable belief the child is being held." Figueroa v. Mazza, No. 11-CV-3160 (ARR) (CLP), 2017 WL 1194648, at *9 (E.D.N.Y. Mar. 30, 2017) (citing United States v. Thomas, No. 14-cr-31, 2015 WL 164075, at *4 (D. Conn. Jan. 13, 2015)); see also Gilliam, 2012 WL 4044632, at *2 ("It has been sensibly held that the potential sexual exploitation of a minor is an exigent circumstance.").

### b. Emergency-Aid Exception

Another well-recognized exception to the Fourth Amendment's general rule against warrantless entry is the emergency-aid exception. Under that exception, "law enforcement officers 'may enter a home without a warrant . . . . to protect an occupant from imminent injury.'" Mazza, 2017 WL 1194648, at *8 (quoting Michigan v. Fisher, 558 U.S. 45, 47 (2009)). For the exception to apply, police must have acted without a warrant because of an urgent need to act that did not practically allow for obtaining a warrant in advance. "[T]he emergency aid exception 'does not necessarily involve a suspicion of wrongdoing at the moment that the police take action, and accordingly, does not consider probable cause or the availability of a warrant.'" Id. at *8 (citation omitted).

7

2. **Application**

The police officers' entry into the Residence at issue in the present motion is clearly justified under either of the exceptions described above.[2]

   a. **The Exigent-Circumstances Exception Applies**

In determining whether the exigent-circumstances exception applies, the court relies on the six-factor test offered by the Second Circuit in United States v. Fields, 113 F.3d 313, 323 (2d Cir. 1997), described in the preceding section. Applying this test to the present case counsels strongly in favor of a determination that the exigent-circumstances exception applies.

The first factor cuts in favor of the exception applying: Defendant was suspected of statutory rape and child trafficking, which are undoubtedly grave offenses. (Gov't Opp'n at 7.) The second factor does not point strongly in either direction, because officers did not have reason to think that Defendant was armed but also did not have reason to think that he was not armed. The third factor supports application of the exception, as testimony, phone logs, and bank records all provided probable cause to conclude that Defendant had lured Doe to the United States for the purpose of having a sexual relationship with her. (Id. at 7-8.) The fourth factor and fifth factors both support a finding of exigent circumstances: police officers saw Defendant attempt to leave and then retreat back into the premises with Doe, both providing evidence of Defendant's presence in the Residence and reason for concern that he might escape if not swiftly apprehended. Finally, the peaceful entry by the officers into the Residence demonstrates satisfaction of the sixth factor: while Defendant does allege that officers had firearms drawn upon entry, (see Price Decl. ¶ 4), he does not allege that the firearms were pointed at him or that he was fearful for his safety.

---

[2] Defendant also questions the legality of the arrest, but he does not provide grounds for the arrest being illegal aside from the entry into the Residence being unlawful. Holding that the entry was lawful, the court finds no other basis for challenging the legality of the arrest.

8

In sum, in the court's view, the only factor cautioning against application of the exigent-circumstances exception not applying is the lack of information regarding whether Defendant was armed, and this consideration alone is insufficient to outweigh the other factors, which point strongly in favor of the exception applying. Accordingly, the court concludes that the exigent-circumstances exception applies to the officers' initial entry into the Residence.

Additionally, as discussed above, it has been held that the potential sexual exploitation of a minor is an exigent circumstance. See, e.g., United States v. Johnson, 22 F.3d 674, 680 (6th Cir.1994) (concluding that officers were responding to an exigent circumstance when they removed the lock from an armored gate to remove a minor who had been held against her will and sexually assaulted); United States v. King, 560 F. Supp. 2d 906, 916 (N.D. Cal. 2008) (concluding that the need to protect a minor from sexual contact can give rise to an exigent circumstance even without a risk of physical injury to the child). Here, officers had information prior to entering the Residence that Doe was a minor and reported missing. (Gov't Opp'n at 2.) There was also strong circumstantial evidence that she was engaged in a sexual relationship and likely in imminent danger, whether it be at the hands of Defendant or self-inflicted. (Id.) Upon viewing Defendant attempt to leave the Residence with Doe and then retreat back inside the Residence hastily, exigency was present and, therefore, entering the Residence was both justified and lawful.

### b. The Emergency-Aid Exception Applies

Even if the exigent-circumstances exception did not apply in our case, the police would still have been justified in entering the home pursuant to the emergency-aid exception.

Defendant argues that, although he was seen by the police in the residence with a minor child and suspected sex trafficking victim who had been missing for several weeks, there was no

9

reason to believe that that Doe was in danger or being held against her will. (See Def. Mem. at 4.) This argument fails. The Government alleges that, after meeting Defendant, Doe did not show up for her flight back to Australia and cut off contact with her family. (Gov't Opp'n at 1-2.) Further, Doe, a minor, was with Defendant, who was 23 years older and had a criminal record that police knew to include acts of violence. (Id. at 8.) Additionally, a source had informed police officers that she had received several Snapchat communications from Doe depicting her upset and crying, and one image depicting blood on Doe. (Id. at 3.) In the court's view, these facts alone provided police officers with sufficient reason to think that Doe was in physical danger.

Furthermore, even if Doe had not been in danger of bodily harm, the allegations make clear that she was still certainly in danger of being statutorily raped and sexually exploited. The facts alleged by the Government support the existence of an objective basis to believe that that Defendant intended to commit these acts, which by itself supports a determination that Doe was in danger and that the emergency-aid exception should apply. See, e.g., Hunsberger v. Wood, 570 F.3d 546, 555 (4th Cir. 2009) ("[A] reasonable officer could conclude that prompt entry was necessary in order to protect the . . . home from potential damage and to locate a missing [teenage] girl who might be in harm's way."); United States v. Kenfield, 270 F. App'x 695, 696-97 (9th Cir. 2008) (unpublished) (warrantless search of home is justified where evidence suggested that a missing minor female was inside with a man known to have a proclivity for young girls); United States v. King, 560 F. Supp. 2d 906, 916 (N.D. Cal. 2008) (warrantless entry reasonable to meet need to protect minor from likelihood of sexual contact).

In the present case, it was reasonable for the police officers to think that Doe was in danger. Further, there was reason for officers to think that she was in danger even if they did not

believe that she was in danger of violent harm. The danger of being statutorily raped or being sexually exploited would be sufficient for the emergency-aid exception to apply.

* * * *

For the foregoing reasons, the court concludes that both the exigent-circumstances exception and the emergency-aid exception apply. Thus, notwithstanding the fact that the police officers entered the residence without a warrant, their entry was not unconstitutional.

**B.     The Seizure of the Defendant's Telephones**

**1.     The Defendant's Argument**

Defendant argues that, even if law enforcement had been justified in entering the Residence and arresting Defendant, the seizure of two telephones belonging to Defendant during that entry was illegal. According to Defendant, "[Defendant] did not consent to seizure of the telephones and they were not sufficiently 'suspicious' to permit plain-view seizure." (Def. Mem. at 4.)

Even if Defendant is correct that the seizure of the telephones was unjustified, those telephones, and evidence obtained through them, are admissible under the inevitable discovery doctrine.

**2. The Inevitable Discovery Doctrine**

Under the inevitable discovery doctrine, "evidence obtained during the course of an unreasonable search and seizure should not be excluded if the government can prove that the evidence would have been obtained inevitably without the constitutional violation." United States v. Heath, 455 F.3d 52, 55 (2d Cir. 2006) (internal quotation marks omitted); see also United States v. Bailey, 743 F.3d 322, 339 (2d Cir. 2014); United States v. Bogle, 522 F. App'x 15 (2d Cir. 2013) (unpublished). A court should thus admit evidence if "'it has a high level of

11

confidence that the warrant in fact would have issued and that the specific evidence in question would have been obtained by lawful means.'" Heath, 455 F.3d at 60 (quoting United States v. Lavan, 10 F. Supp. 2d 377, 389 (S.D.N.Y. 1998)). In determining whether to employ the inevitable discovery doctrine, the court should consider "viewing affairs as they existed at the instant before the unlawful search, what would have happened had the unlawful search never occurred." United States v. Eng, 971 F.2d 854, 861 (2d Cir. 1992).

The doctrine permits courts to admit unconstitutionally obtained evidence "if an independent, lawful police investigation inevitably would have discovered it." United States v. Owens, 782 F.2d 146, 152 (10th Cir. 1986). The inevitable discovery doctrine "applies whenever an independent investigation inevitably would have led to discovery of the evidence, whether or not the investigation was ongoing at the time of the illegal police conduct." United States v. Larsen, 127 F.3d 984, 986–87 (10th Cir. 1997) ("[I]t is possible for an investigation that begins after the violation to be independent of the illegal investigation."); see also United States v. Cunningham, 413 F.3d 1199, 1204 n.1 (10th Cir. 2005) (stating that there is no conflict between the rules set forth in United States v. Larsen and United States v. Cunningham). "[A]s long as it can be shown by demonstrated historical facts that an independent and untainted discovery would inevitably have occurred, the evidence will be admissible." United States v. Griffin, 48 F.3d 1147, 1151 (10th Cir. 1995) (internal citations and quotations omitted).

In this case, the court concludes that such inevitability exists and that the two telephones would have been lawfully obtained by a later-issued warrant. Law enforcement officers had ample evidence prior to entering the Residence that Defendant and Doe had been in an online relationship that stemmed from social media contact and that Doe had traveled to the United States to be with the Defendant, providing probable cause to believe Defendant committed the

12

crimes with which he has now been charged. (Gov't Opp'n at 8, 13.) Moreover, prior to seizing the phones, officers had reliable information that Defendant and Doe were communicating via online platforms, as indicated by screenshots of video-chat communications found on Doe's hard drive, and that evidence of those conversations could be found on Defendant's phones. (Id. at 2.) Doe's statements confirmed that Defendant and Doe had been communicating via Facebook and Snapchat. (Gov't Opp'n at 13-14.) Thus, officers had reliable evidence that the phones contained evidence of crimes. Based on these considerations, the court concludes that the two telephones, and the evidence obtained through those telephones, would have inevitably been uncovered as a result of independent investigation from known facts untainted by any alleged illegality.

Accordingly, the court concludes that, even if the seizure of the two telephones was not lawful, there was sufficient independent evidence that would lead to a magistrate judge inevitably issuing a warrant to seize the telephones. As a result, the two telephones, and the evidence obtained through those phones, are not subject to suppression.

### C. Statements Given After Miranda Warning and Consent to Search

Because the entry into the residence was justified and because the two telephones and evidence obtained through them are admissible, the court's inquiry could come to an end. Nevertheless, the court considers additional support for the conclusion that the motion to suppress should be denied and concludes that, if the entry had been unjustified, it still would not be proper to grant the motion to suppress Defendant's statements at the precinct.

Defendant argues those statements are inadmissible as the byproduct of the allegedly unconstitutional entry into the Residence. Even if the entry had been illegal, though, this would not invalidate the Defendant's voluntary waiver of his Miranda rights because there was no coercion. See, e.g., United States v. Wilson, No. 12-CR-610 (RPP), 2012 WL 6641492, at *9

13

(S.D.N.Y. Dec 18, 2012) (defendant consented voluntarily despite being arrested, handcuffed, placed in the back of a patrol vehicle and not advised of Miranda rights because such conditions were insufficient to establish coercion and there was no indication of any coercive action by police). Moreover, in circumstances similar to those presented here, courts have found that the possible taint from an illegal search and seizure has dissipated and is sufficiently attenuated that the statements made would be admissible: Defendant's interview was an hour and a half after the detention in his home, he had been informed of his Miranda rights and signed a written waiver of them, and there were no allegations of coercive conditions resulting from the police officer's conduct or the circumstances presented. See United States v. Shyne, No. 05-CR-1067, 2007 WL 1075035 (S.D.N.Y. Apr. 5, 2007).

Even had the entry into the Residence been unjustified and even if the inevitable discovery doctrine were to not apply to the seizure of the two telephones, Defendant's signed consent to a search of his cellular telephones renders the evidence obtained from those phones admissible. Two signed consent forms have been produced, (see Ex. B to Gov't Opp'n (Dkt. 35-1)) and, absent coercion, Defendant's signing these consent forms after signing a written waiver of his Miranda rights, is dispositive of the inquiry.

For these reasons, even if the entry into the Residence had been unjustified, the statements that the Defendant made in the precinct post-arrest and the evidence found in the consented-to search of the telephones would still be admissible.

### D. Evidence Obtained Pursuant to the Facebook, Snapchat, and Premises Warrants

Defendant maintains that evidence obtained in connection with the Facebook, Snapchat, and Premises Warrants should be suppressed. (See Suppl. Mot.) He contends that these

warrants were invalid because they relied, in part, on evidence that was "fruit of the poisonous tree"—fruit of the underlying illegal arrest at the Residence. (Id.)

In light of the court's determinations in the preceding sections, however, the court concludes that the Facebook, Snapchat, and Premises Warrants were valid. Thus, the evidence obtained from these warrants is admissible.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to suppress (Dkt. 21) and supplemental motion to suppress (Dkt. 33) are DENIED.[3]

SO ORDERED.

Dated: Brooklyn, New York
October 23, 2017

/s Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

---

[3] The court notes that Defendant requested an evidentiary hearing to address the issues raised in these motions. (See Mot.; Suppl. Mot.). Because the court is able to resolve the disputes based on the record already before it and the parties' briefing, no further hearing is required. Absent material issues of fact, an evidentiary hearing on a defendant's motion to suppress is not warranted. See, e.g., United States v. Wilson, 493 F. Supp. 2d 364, 380 (E.D.N.Y. 2006) (Garaufis, J.) (citations omitted).