

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

TM:MKC
F.#2017R00938

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 19, 2018

By ECF

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Sean Price 17-CR-301 (S-1) (NGG)

Dear Judge Garaufis:

      The government respectfully submits this letter in advance of sentencing in this case, which is scheduled for September 21, 2018, at 10:00 a.m. For the reasons set forth below, the government respectfully requests that the Court impose a significant sentence that that reflects the seriousness of the defendant's crimes of conviction, provides just punishment for the offenses, deters criminal conduct and protects the public from future crimes of the defendant. See 18 U.S.C. § 3553(a).

      As demonstrated at trial, the defendant's offense conduct was gravely serious. Indeed, the crimes of conviction carry substantial penalties, including a mandatory minimum of 15 years of imprisonment as to Count Four. Moreover, the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") applicable here recommend a range of 360 months to life imprisonment. For all of the reasons set forth herein, a sentence well above the applicable mandatory minimum in this case is appropriate as anticipated by the Guidelines.

I.    Factual Background

      On April 11, 2017, Jane Doe, a sixteen-year-old Australian minor, flew from Sydney, Australia to Los Angeles, California. Presentence Investigation Report dated May 1, 2018 ("PSR") ¶¶ 8 and 10. The same day, the defendant, who was thirty-nine years old, flew from New York to Los Angeles to pick her up. Id. He then drove her across the country to his home in Queens. Along the way, he had sex with her. Id. When they arrived, he continued to have sex with her. Id.

Jane Doe was recovered on May 11 2017, when law enforcement officers from the New York City Police Department ("NYPD") and the Department of Homeland Security, Homeland Security Investigations, responded to the defendant's home at 118-28 Long Street, Jamaica, New York, in search of Jane Doe. Id. at ¶ 11. The defendant's mother answered the door. Id. Initially, she denied that the defendant and Jane Doe were home. Id. Law enforcement officers stationed at the rear of the home, however, observed the defendant and Jane Doe attempting to leave the home through the rear of the house. Id. One NYPD officer alerted his fellow officers by shouting. Id. In response, the defendant and the minor re-entered the home, and the NYPD officers likewise entered the residence so as to locate the minor. Id. The defendant and Jane Doe were found in the basement of the residence. Id. The defendant was then placed under arrest on New York state charges, including Rape in the Third Degree and related charges. Id.

Following his arrest, the defendant was informed orally and in writing of his Miranda rights. Id. at ¶ 12. He was also presented with a Miranda waiver, which he reviewed and signed. Id. Thereafter, the defendant admitted, inter alia, that he met Jane Doe online in approximately October 2016. Id. He further stated that he and Jane Doe had agreed that she would be traveling to Los Angeles where the defendant would pick her up and then drive her back to New York. Id. He also acknowledged sending Jane Doe $900 via Western Union prior to her travel into the United States and stated that he had been aware of her age, and nevertheless drove her from Los Angeles to New York and repeatedly had sex with her. Id. The defendant also stated that, after he arrived in New York, he continued to have sex with Jane Doe. Id.

On June 6, 2017, a grand jury sitting in the Eastern District of New York returned a three-count indictment, charging the defendant with a Mann Act violation, enticing a minor to travel in interstate and foreign commerce to engage in illegal sexual activity and transporting a minor in interstate and foreign commerce to engage in illegal sexual activity, in violation of Title 18, United States Code, Sections 2421, 2422(a) and 2423(a), respectively. On September 5, 2017, a grand jury returned a superseding indictment that further charged the defendant with attempted sexual exploitation of a child, receipt of child pornography, and possession of child pornography, in violation of Title 18, United States Code, Sections 2251(e), 2252(a)(2) and 2252(a)(4)(b), respectively.

On December 9, 2017, trial commenced against the defendant. At trial, the evidence included Facebook discussions between Jane Doe and the defendant from December 2016 through April 2017—prior to her travel to the United States. Those discussions were entered into evidence as Government's Exhibit 21 and Government's Exhibit 21-Summary. Overwhelmingly, the discussions centered on one topic: how to get Jane Doe, a minor, from Australia to New York without her parents or law enforcement finding out. Id. at ¶ 9.

[redacted]

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Over the course of the communications, Jane Doe also told the defendant she was only sixteen. PSR at ¶ 9. Indeed, the defendant repeatedly discussed Jane Doe's age with her and even acknowledged it was illegal for him to have sexual contact with her. Id. Still, he repeatedly described to her, in explicit detail, the things he wanted to do to her body once she arrived to the United States. Id. Until then, he encouraged her to send him pictures of her private parts and asked her to take pictures of herself in the shower. Id.

Alongside those discussions, the defendant repeatedly encouraged Jane Doe to run away and join him in New York. Id. The defendant encouraged her to obtain a fake passport, he sent her money to help her buy fake documents, and he encouraged her to convince other men online to send her money. Id. He even offered to play her father to help her get through airport security. See Exhibit 2. Ultimately, he sent her the money she needed to buy her plane ticket, which she purchased the very next day. Id.

The defendant's Facebook communications also outlined the defendant's plans for Jane Doe after she arrived in New York. To avoid deportation, the defendant was going to get her pregnant. For money, he was going to collect what she earned from working as a stripper, a point he bragged about in a separate discussion with a friend prior to Jane Doe's travel to New York. See Government's Exhibit 21 LL.

On December 15, 2017, the jury returned its verdict, convicting the defendant on Counts One through Four of the above-referenced superseding indictment, which charged the defendant with: (1) Interstate and Foreign Enticement to Engage in Illegal Sexual Activity; (2) Interstate and Foreign Transportation of a Minor to Engage in Illegal Sexual Activity; (3) a Mann Act Violation; and (4) Attempted Sexual Exploitation of a Child, in violation of Title 18, United States Code, Sections 2422(a), 2423(a), 2421 and 2251(e), respectively. PSR ¶¶ 1-4. The defendant was acquitted of the remaining four charges in the superseding indictment alleging possession and receipt of child pornography.

II.   Guidelines Calculation

On September 19, 2018, the United States Probation Department issued the third addendum to the PSR in this case. The government agrees with the Guidelines range as set forth therein:

Counts One through Three

| | | |
|---|---|---:|
| Base Offense Level (§ 2G1.3(a)(3)) | | 28 |
| Plus: | Undue Influence of a Minor to engage in Prohibited Sexual Conduct (§ 2G1.3(b)(2)(B)) | +2 |
| Plus: | Use of a Computer (§ 2G1.3(b)(3)) | +2 |

| | | |
|---|---|---:|
| Plus: | Commission of a Sex Act (§ 2G1.3(b)(4)) | +2 |
| Plus: | Obstruction of Justice (§ 3C1.1) | +2 |
| Plus: | Vulnerable Victim (§ 3A1.1(b)(1)) | +2 |
| Total: | | 38 |

Count Four

| | | |
|---|---|---:|
| Base Offense Level (§ 2G2.1(a) | | 32 |
| Plus: | Commission of a Sex Act (§ 2G2.1(b)(2)(A)) | +2 |
| Plus: | Use of a Computer (§ 2G2.1(b)(6)(B)) | +2 |
| Plus: | Obstruction of Justice (§ 3C1.1) | +2 |
| Plus: | Vulnerable Victim (§ 3A1.1(b)(1)) | +2 |
| Total: | | 40 |

Multiple Count Analysis (§§ 3D1.1, 3D1.2, 3D1.3, 3D1.4)

Highest Adjusted Offense Level: 40

| | | | Level | Units |
|---|---|---|---|---|
| Group 1: | Counts 1-3 | | 38 | 1 |
| Group 2: | Count 4 | | 40 | 1 |

Plus: 2 Units (§ 3D1.4)                                                   +2

Total:                                                                            42

Accordingly, the defendant's Guidelines calculation is 42, which, when combined with a criminal history category of VI, results in a Guidelines range of 360 months to life.

III.     Analysis

The government submits that a significant sentence, in excess of the applicable 15-year mandatory minimum, is appropriate to achieve the goals of sentencing. See 18 U.S.C. § 3553(a). Such a sentence is warranted in light of the defendant's demonstrated lack of remorse, which, when combined with his criminal history, creates a significant concern as to the defendant's risk of recidivism.

4

a. <u>The Defendant's Characteristics and Criminal History Support a Sentence Well above the Applicable Mandatory Minimum</u>

The defendant's refusal to take responsibility for his actions is perhaps best illustrated in his letter to the Court. There, the defendant reflects:

> *"I've always been the type of person to help people who asked or claimed they need help and sometimes this very good trait gets me into trouble. . . . I've had a hard time telling people no or being selfish and thinking what would be best for me this has been my greatest downfall in my life. My heart is too big and sometimes I make the wrong decisions just trying to help."*

The defendant's claim that he was "trying to help" demonstrates a total lack of appreciation for the seriousness of his offense conduct and the gravity of his actions. The record at trial made plain that the defendant encouraged a ▮▮▮▮ minor to drop out of school, run away from home and fly halfway across the world so she could give him sexual gratification and earn him money as a stripper. In addition, the defendant repeatedly asked Jane Doe to send him pictures of her body, including her private parts. Based on his submission, it is unclear whether the defendant is asserting that these requests were also motivated by his "trying to help" Jane Doe.

What is clear, however, based on the record evidence admitted at trial, is that the defendant was not motivated by trying to "help" Jane Doe ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Tellingly, when she raised even the slightest indication that she might run away to some place other than New York, the defendant responded with disapproval and anger. <u>See</u> Exhibit 1. This is not the conduct of someone who is simply trying to help. Moreover, the discussions between Jane Doe and the defendant show his preoccupation with the sexual acts he wished to perform on Jane Doe and the money she could earn as a stripper, making clear that he his primary motivation was to exploit her.

The defendant's choices have consequences that will continue to affect Jane Doe's life for years to come. As set forth in the Addendum to the PSR, in the wake of the defendant's conduct, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[1] The fact that the defendant continues to demonstrate no remorse for the choices that caused these harms to Jane Doe speaks volumes of his likelihood for reoffending.

---

[1] All the while, the defendant has repeatedly attempted to contact Jane Doe both during the course of his prosecution and after his conviction. PSR ¶ 21. Indeed, in his recent filing with the Court, the defendant even complained that his attorney had refused to contact "the witness," presumably Jane Doe, on his behalf. ECF No. 104.

Similarly, the defendant's statements regarding his criminal history during the PSR interview and to Dr. Richard Krueger during his psychological evaluation amply demonstrate that the defendant is an individual who refuses to take responsibility for his own actions. For example, in 1996, the defendant was convicted on a plea of guilty to criminally negligent homicide. PSR ¶ 48. In his PSR interview, the defendant maintained that his guilty plea, rather than signaling any willingness to accept responsibility, was the product of the defendant's tiring of attending court proceedings. PSR ¶ 48. The PSR notes that conviction arose from evidence that the defendant was driving a car at 74 miles per hour in a 30 miles per hour speed zone when he crashed a car, killing a passenger. PSR ¶ 48. The defendant significantly minimized his conduct when he discussed this conviction with Dr. Krueger—recounting that he was only traveling 10 miles per hour over the speed limit. ECF No. 109-1 at 3.

This theme reappears throughout the defendant's discussions with Dr. Krueger. For example, the defendant describes his 2000 arrest for unlawful possession of a firearm, PSR ¶ 49, as the result of the car he had borrowed having a weapon in its trunk. ECF No. 109-1 at 3. Likewise, the defendant's 2008 conviction for resisting an arrest for violating an order of protection—an incident that involved the defendant's actually running over the foot of an officer and engaging in a high speed chase—is reported by the defendant as escalating from a simple attempt to visit his sick child. See, PSR ¶ 55; cf. ECF No. 109-1 at 4. Given these self-exculpatory explanations, it is not surprising that the defendant justifies his conduct with respect to Jane Doe as simply falling victim to his own good intentions, or, in the alternative, the byproduct of substance abuse. See ECF No. 109-1 at 5.

The defendant's tendency to deny or minimize his culpability for his conduct is particularly disturbing when considered alongside the remainder of the defendant's criminal history. The defendant's significant criminal history shows he has little regard for authority or potential legal repercussions. His convictions include: (1) a parole violation that arose from his assaulting his girlfriend who was seven months pregnant at the time; (2) at least three convictions for resisting arrest—including one instance where the defendant sprayed officers with mace; and at least four instances of the defendant violating orders of protection. PSR ¶¶ 50, 52, 54-55 and 57.

b. There are No Mitigating Circumstances Here

Contrary to the defendant's assertions, there are no mitigating circumstances here. The defendant argues that his conduct in this case represents "aberrant behavior" and the same should be considered as mitigation. Def.'s Sentencing Submission at 2. While the defendant's convictions represent his first sex offenses, they hardly represent a departure from an otherwise law-abiding life. To the contrary, the instant convictions mirror the defendant's demonstrated history of engaging in criminal conduct. The defendant stands before this Court with at least six prior convictions and 13 Criminal History points. PSR ¶¶ 48-58.

Further, the defendant argues that the age of consent in Jane Doe's home state of Australia (which he asserts is 16) should be treated as a mitigating factor. Def.'s Sentencing Submission at 2. This argument should be rejected. As a threshold matter, deeming the laws of other jurisdictions as providing mitigating factors could lead to absurd results. If the defendant had found his victim in a country where the age of consent is 13, would it constitute a mitigating factor to solicit a 14 year old? Clearly not. Accordingly, this argument should be rejected as totally irrelevant to the defendant's culpability. What matters here is that the evidence demonstrated, beyond a reasonable doubt, that the defendant had specific knowledge that Jane Doe's age rendered his sexual contact with her a crime and, in his own words, he did not care. Trial Transcript 522:10-15. To treat the law of other jurisdictions as mitigation for that indifference runs counter to 18 U.S.C. 3553(a)'s goal of "promoting respect for the law." The defendant lives in the United States. He is bound by, was convicted under, and must now be sentenced according to its laws.

Lastly, the defense maintains that this Court should find mitigation in what the defense refers to as the victim's "willing participa[tion] in this ill-fated love affair." Def.'s Sentencing Submission at 2. Jane Doe's "participation," aside from being legally irrelevant as a defense, should not be credited to the defendant. At the time of the offense conduct, the defendant was a 39-year-old man and Jane Doe was a ▮▮▮▮ 16-year-old girl. Under the applicable Guidelines, even a ten-year disparity in age gives rise to a presumption of "undue influence." U.S.S.G. § 2G1.3, Application Note 3(B). Here, the defendant was more than 20 year's Jane Doe's senior.

Even if the Court were to set aside this age disparity,  What's more, when she expressed fear and anxiety in the days prior to departing for the United States, the defendant encouraged her to travel to meet him. Exhibit 1. Their discussions make clear that Jane Doe's "participation" was motivated by precisely the factors that rendered her uniquely

susceptible to the defendant's promises of a better life with him. The defendant's willingness to exploit that vulnerability is readily apparent.

    c. The Conclusions of Dr. Richard Krueger are Unreliable

The defendant also presents the psychological evaluation of Dr. Richard Krueger for the Court's consideration. There, Dr. Krueger concludes that the defendant is at a moderate risk of committing sexual violence and future sex crimes. ECF No. 109-1 at 10-11. Dr. Krueger's conclusions rest largely on the defendant's own self-serving statements, which differ from his representations during his PSR interview in key respects.

Dr. Krueger concluded that, throughout his adult life, the defendant had "severe involvement with crack cocaine, cocaine, marijuana, alcohol, and heroin" and, based on that, found that "successful treatment of [the defendant's] substance use disorders would reduce his risk of recidivism." Id. at 11. In reaching this conclusion, Dr. Krueger apparently took the defendant at his word when he stated that "he was under the influence of alcohol, marijuana and cocaine when his interactions with Jane Doe occurred," id. at 5—a truly incredible claim considering that the defendant spoke with Jane Doe daily, sometimes hourly, from at least December 2016 to April 2017. Significantly, however, at his PSR interview, the defendant denied daily use of alcohol and marijuana, stated that he had not used heroin since 2015 and made no mention of using cocaine at all. PSR ¶¶ 87, 91-92. As to crack cocaine, the defendant admitted use through March 2017.[2] These inconsistencies call into question Dr. Krueger's conclusion that drug treatment would offer any assurances regarding the defendant's potential for recidivism.

Dr. Krueger's conclusions are also internally inconsistent. For example, defense counsel highlights Dr. Krueger's conclusion that the defendant does not suffer from ephebophilia, a pattern of sexual interest in young teenagers. Per Dr. Krueger's report, this disorder would require at least six months of "sustained fantasies, urges or behavior" related to sexual interest in young teenagers. Id. at 11. Yet, by the defendant's own account to Dr. Krueger, his relationship with Jane Doe (a teenager) commenced in October 2016 and persisted through May 2017—a period of over six months. Id. at 5. As the Court no doubt recalls, much of that relationship is depicted in the Facebook chats read into evidence by the government at trial. Those discussions contain countless iterations of the defendant's sexual fantasies regarding Jane Doe, as well as requests for Jane Doe to send the defendant photographs of her body, including her private parts. Accordingly, Dr. Krueger's conclusions on this point are inconsistent; the Court should thus reject these conclusions in fashioning the appropriate sentence here. Should the Court find Dr. Krueger's conclusions to

---

[2] The defendant's responses as recounted in the PSR were somewhat inconsistent on this point, as the defendant claimed that he stopped using crack cocaine in March 2017, but then also stated that he stopped using it when he was arrested (May 2017).

be material, the government respectfully requests a hearing and opportunity for cross-examination.

IV.     Restitution

The defense also objects to the Addendum to the PSR setting forth the Affidavit of Loss of Jane Doe's mother. "18 U.S.C. § 2259 provides that a person convicted of sexual exploitation of a child must pay restitution." United States v. Searle, 365 Fed. Appx. 343 (2d Cir. 2003). As detailed in 18 U.S.C. § 2559, following a conviction under Chapter 110 of Title 18 of the United States Code, the Court is required to order restitution in the full amount of the victim's losses, including "medical services, transportation, and temporary housing as well as 'any other losses suffered by the victim as a proximate result of the offense.'" Searle, 365 Fed. Appx. at 346 (quoting 18 U.S.C. § 2559(b)(3)). See also 18 U.S.C. §§ 3663 & 3663A.

Section 2259 expressly defines the term "victim" as "the individual harmed as a result of a commission of a crime under this chapter, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate . . ." 18 U.S.C. § 2559(c). See, .e.g., Searle, 365 Fed. Appx. at 346 (affirming district court's award of restitution under § 2559 for losses incurred by minor victim's guardians where such losses were proximately caused by the defendant's offense conduct).

In this case, Jane Doe's mother submitted a loss affidavit that details her daughter's and her family's losses that were incurred as a result of the defendant's exploitation of Jane Doe and his luring her around the world in connection with that exploitation. Under Section 2259, and the Second Circuit's analysis in Searle, the entry of an order restitution for these losses by the victim is required by law. Cf. United States v. Crandon, 173 F.3d 122, 126 (3d Cir. 1999) (holding that sexual exploitation by defendant proximately caused victim's hospitalization and related expenses even though she may have suffered from a pre-existing emotional condition that had gone untreated) (cited in Searle).

V.      Conclusion

Based on the evidence at trial, and for the foregoing reasons, a substantial

sentence, in excess of the 15-year mandatory minimum in this case, is appropriate and necessary to achieve the goals of sentencing.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:   /s/ Monica K. Castro
Monica K. Castro
Taryn A. Merkl
Assistant U.S. Attorneys
(718) 254-6040/6064

cc:    Clerk of Court (NGG)
      Zoe Dolan (by ECF)
      U.S. Probation Officers Patricia Sullivan