1

```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK
 2
     - - - - - - - - - - - - - - X
 3
     UNITED STATES OF AMERICA,      : 17-CR-00301(NGG)
 4                                  :
                                    :
 5                                  :
          -against-                 : United States Courthouse
 6                                  : Brooklyn, New York
                                    :
 7                                  :
                                    : Friday, September 21, 2018
 8   SEAN PRICE,                    : 10:00 a.m.
                                    :
 9            Defendant.            :
                                    :
10
     - - - - - - - - - - - - - - X
11

12        TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
          BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
13            UNITED STATES SENIOR DISTRICT JUDGE

14              A P E A R A N C E S :

15   For the Government:  RICHARD P. DONOGHUE, ESQ.
                          United States Attorney
16                        Eastern District of New York
                          271 Cadman Plaza East
17                        Brooklyn, New York 11201
                      BY:  MONICA K. CASTRO, ESQ.
18                        TARYN A. MERKL, ESQ.
                          KARIN K. ORENSTEIN, ESQ.
19                        Assistant United States Attorneys

20
     For the Defendant:    ZOE JAYDE DOLAN
21                         154 Grand Street
                           New York, New York 10013
22                       BY:ZOE JAYDE DOLAN, ESQ.

23
     Court Reporter:  Stacy A. Mace, RMR, CRR, RPR, CCR
24                    Official Court Reporter
                      E-mail:  SMaceRPR@gmail.com
25   Proceedings recorded by computerized stenography.  Transcript
     produced by Computer-aided Transcription.
```

```
                         Proceedings                    2
```

1                       (In open court.)

2              (Judge NICHOLAS G. GARAUFIS takes the bench.)

3              THE COURT:  Please be seated in the back.  We are

4     waiting for the defendant.

5                   (Defendant enters courtroom.)

6              THE COURT:  Appearances, please.

7              MS. CASTRO:  Good morning, Your Honor.  Monica

8     Castro for the United States.

9              THE COURT:  Good morning.

10             MS. MERKL:  Taryn Merkl for the United States.  And

11    Special Agent Christopher Davies of the Department of Homeland

12    Security.

13             MS. ORENSTEIN:  And Karin Orenstein for the United

14    States.

15             Good morning, Your Honor.

16             THE COURT:  Good morning, everyone.  Please be

17    seated.

18             MS. DOLAN:  And Zoe Dolan for defendant Sean Price

19    who is present and in custody.

20             Good morning, Your Honor.

21             THE COURT:  Good morning.  Good morning, Mr. Price.

22             All right, first thing we need to do is, Ms. Dolan,

23    I understand that you had some communication with your client

24    respecting your representation, so we need to deal with that

25    first.

Proceedings                                                    3

1        MS. DOLAN:  Well, just to be clear, it was actually

2   from his mother after I had met with him regarding sentencing

3   on Friday.  But at any rate, Mr. Price has just informed me

4   that he does not wish to request new counsel or to represent

5   himself.

6        THE COURT:  All right.

7        Is that true, Mr. Price?

8        THE DEFENDANT:  Yes, Your Honor.

9        THE COURT:  Okay, very well.  So then we will

10  proceed with the process.

11       There are some late motions that have been brought

12  by the defense, and why don't we go over that first.

13       Ms. Dolan.

14       MS. DOLAN:  Yes.

15       In speaking with Mr. Price in preparation for the

16  sentencing he did ask me to raise and preserve this issue, and

17  so I have endeavored to do so.  I apologize that it wasn't

18  briefed as thoroughly as I might have done.  I was uncertain

19  of the status of my representation, but nevertheless wanted to

20  ensure that the issue had, at least, been raised.

21       I think at this point we would submit on the papers.

22  I have nothing further to add beyond what I've already argued,

23  although I am happy to address any questions that the Court

24  has.

25       THE COURT:  All right.  All I would like you to do

Proceedings                                                      4

1  is identify what the precise application is, or what the

2  motion is so that I can hear from the Government, not on all

3  the background or the legal arguments, but on what the

4  infirmity is that you are raising with the Court at this

5  point.

6          MS. DOLAN:  Well, our position is that there is

7  nothing in the record to establish that the NYPD had probable

8  cause to arrest Mr. Price at the time of his arrest and,

9  therefore, any statements elicited from him at the precinct

10 should have been suppressed.  And I think that it's

11 particularly pertinent as to Counts One, Two and Three

12 because, as I argued in the papers, his -- Mr. Price's

13 statement concerning whether he had sex with Jane Doe in

14 New York was the only direct evidence that the Government

15 admitted on that precise question.

16         I take the Government's arguments with respect to

17 all of the circumstantial evidence surrounding the jury's

18 possible conclusion there, but I think it's an infirmity

19 because it is the only direct evidence of it and it, arguably,

20 should not have been admitted into the trial.

21         There are states that they passed through where Jane

22 Doe was of the age of maturity and could legally consent.  So

23 I do think that -- which I argued previously, so I do think

24 that this issue is a meaningful one.

25         THE COURT:  Okay, thank you.

Proceedings                                                        5

1          Ms. Castro.

2          MS. CASTRO:  Yes; thank you, Your Honor.

3          As set out in the Government's papers, the fact of

4    the defendants' having sexual intercourse with Jane Doe is

5    simply not an element of any of the crimes of conviction.  The

6    Government charged the defendant and he was convicted of

7    transporting Jane Doe for the purposes of engaging in illegal

8    sex.  It need not be the case that we proved he had sex with

9    her.  Of course, that was borne out in the evidence, but even

10   absent that point there is ample evidence to prove that the

11   defendant transported her with the purpose of engaging in sex

12   with her in New York, which would be illegal.  And that, in

13   and of itself, establishes the crimes of conviction.

14          So to the point of whether or not this could be

15   dispositive in any way, the Government submits that it would

16   not be.  In any event, it is clear that there was ample basis

17   to arrest the defendant when the young minor was found in his

18   home.

19          The defense counsel in her letter cites to certain

20   investigative notes from the Australian authorities, and they

21   all predate what the officers observed on the day of the

22   defendant's arrest.  They discuss questioning the defendant

23   regarding money transfers, for example, that they knew he had

24   submitted to the young minor who had been missing.  The day of

25   these -- at that point in time it was not known if the minor

Proceedings                                        6

1   was, indeed, with the defendant.  At the time of his arrest,

2   law enforcement not only had the additional background from

3   Australia, but they had seen him in the presence of this young

4   minor and they had seen him attempting to flee with her.  At

5   the point of that recovery, there was ample basis to arrest

6   and any notes that might predate that discovery is simply

7   irrelevant to the probable cause to arrest him at that point

8   in time.

9              So the Government submits that this is not

10  dispositive in any way and that, in any event, there was ample

11  basis to arrest the defendant the day that he was arrested,

12  Your Honor.

13             THE COURT:  All right.

14             The Court concludes that there was ample

15  justification for the arrest and that the defendant's arrest,

16  therefore, and questioning was proper and the other basis for

17  the motion is also unsuccessful.  So the motions, the defense

18  motions in the defense's letter of September 17th are

19  overruled.

20             So we are going to go ahead with the sentencing.

21             Now, I am going to go over the materials that I have

22  for sentencing to make sure that everyone has the same

23  materials.

24             There is a pre-sentence investigation report

25  prepared May 1st, 2018.  Does the Government have a copy?

```
                        Proceedings                    7
```

1          MS. CASTRO:  Yes, Your Honor.

2          THE COURT:  Does the defense have a copy?

3          (Pause.)

4          THE COURT:  Do you have a copy of the pre-sentence

5     report?

6          MS. DOLAN:  I'm sorry, he didn't -- Mr. Price was

7     conversing with me.

8          THE COURT:  Do you have a copy of the pre-sentence

9     report?

10          MS. DOLAN:  Not with me.

11          THE COURT:  No, no, no.  Have you reviewed the

12     report with your client?

13          MS. DOLAN:  Yes, I've reviewed this -- he has a

14     copy -- Mr. Price has a copy, an actual copy of everything,

15     save for the September 20th letter from the Government

16     concerning the motion that the Court just ruled on; the third

17     addendum to the pre-sentence report; and the September 19th

18     submission by the Government with respect to sentencing.

19     Although, I have discussed the substance of those submissions

20     with him.  He was provided with a copy of everything else in

21     the record up to now.

22          THE COURT:  Okay, I am just trying to make sure that

23     we go over everything that is in this file.

24          MS. DOLAN:  Yes, of course.

25          THE COURT:  All right.

```
                        Proceedings                    8
```

1          MS. DOLAN:  He does have a copy of the PSR.

2          THE COURT:  And you have reviewed it with him?

3          MS. DOLAN:  Yes, I have.

4          THE COURT:  Thank you very much.

5          There are three addenda to the pre-sentence report.

6     Do both sides have that?

7          MS. CASTRO:  Yes, Your Honor.

8          MS. DOLAN:  Yes, Your Honor.

9          THE COURT:  And you have reviewed that with your

10    client?

11         MS. DOLAN:  Yes, and he has copies of the first two

12    and I've reviewed the third.

13         THE COURT:  Okay, that's good.

14         There is a September 14th, 2018 letter from the

15    defense attaching two exhibits, one of which Exhibit A is

16    reported Dr. Richard Kreuger.

17         Has the Government received a copy of that?

18         MS. CASTRO:  Yes, Your Honor.

19         THE COURT:  There is a September 14th, 2018 letter

20    from Ms. Dolan to the Court in the nature of a sentencing

21    submission.

22         Has the Government reviewed that?

23         MS. CASTRO:  Yes, Your Honor.

24         THE COURT:  Attached to that report are several

25    letters from a number of individuals in support of the

Proceedings                                          9

1    defendant.

2              Has the Government seen that?

3              MS. CASTRO:  Yes, Your Honor.

4              THE COURT:  And also, Exhibit B is a certificate;

5    and Exhibit C is a letter from Mr. Price; Exhibit D is a

6    Brennan Center report entitled "What Caused the Crime

7    Decline"?

8              Have you seen that?

9              MS. CASTRO:  Yes, Your Honor.

10             THE COURT:  And then Exhibit E is a National

11   Institute of Justice publication.

12             Have you seen that?

13             MS. CASTRO:  Yes, Your Honor.

14             THE COURT:  Now, there is a letter, the Government's

15   letter of September 10th, 2018 in advance of sentencing

16   dealing with certain issues, including the sentencing

17   guidelines.

18             Have you seen that?

19             MS. DOLAN:  Yes, I have, Your Honor.

20             THE COURT:  Then there is, I think I mentioned the

21   September 14th, 2018 letter from the defense.

22             MS. CASTRO:  Yes, Your Honor.

23             THE COURT:  You have seen that?

24             MS. CASTRO:  Yes, Your Honor.

25             THE COURT:  Now, there were several letters,

Proceedings                                        10

1    handwritten letters from the defendant to the Court.  There is

2    a letter of June 28th, 2018 and there is another letter, a

3    one-page letter received by the Court on August 3rd, 2018.

4              Have you seen those?

5              MS. DOLAN:  I've seen the June letter.  I don't know

6    if I've seen the August 3rd letter, actually.

7              THE COURT:  Let me show it to you.  I think the

8    Government responded to that.

9              Did it not?

10             MS. CASTRO:  To the August 3rd letter?

11             THE COURT:  Have you seen it?

12             MS. DOLAN:  Was this a motion?

13             THE COURT:  This is a letter as to why Count Four of

14   the charges should --

15             MS. DOLAN:  Oh, right.

16             THE COURT:  Have you seen that?

17             MS. DOLAN:  Yes, I have.

18             THE COURT:  Have you seen it?

19             MS. CASTRO:  Yes, Your Honor.

20             THE COURT:  It was filed on August 3rd on ECF, so it

21   is out there.  I just want to make sure you have seen it --

22             MS. DOLAN:  Yes.

23             MS. CASTRO:  With the additional context, yes, Your

24   Honor.

25             MS. DOLAN:  Yes, I recall now.

```
                    Proceedings                          11
```

1              THE COURT:  Okay, that's fine.

2              And then there is the Government's letter of

3    September 19th, which is in the nature of a sentencing

4    memorandum.

5              You've seen that?

6              MS. DOLAN:  Yes, I have.

7              THE COURT:  And setting forth the Government's view

8    as to the guideline calculation.

9              And we have another visitor.

10             (USPO Patricia Sullivan enters courtroom.)

11             USPO SULLIVAN:  Apologies, Your Honor, for my

12   lateness.

13             THE COURT:  That's okay, just state your appearance.

14             USPO SULLIVAN:  Patricia Sullivan, Probation.

15             Good morning, Your Honor.

16             THE COURT:  Yes, thank you very much.  Welcome.

17             USPO SULLIVAN:  Thank you, Your Honor.

18             THE COURT:  So I think that is everything.  Is there

19   anything else?

20             MS. DOLAN:  I think that covers all the sentencing-

21   related submissions.

22             THE COURT:  Right, that is what I mean; yes.

23             MS. DOLAN:  Yes.

24             THE COURT:  Thank you.

25             All right, so the next step is for the Court to

Proceedings                                        12

1   establish the correct guideline, and there was some

2   disagreement with the guideline calculation.  So what I am

3   going to do is go over the Probation Department's final

4   calculation.

5            I think it is in the third addendum, is it?

6            USPO SULLIVAN:  Correct, Your Honor.

7            THE COURT:  Let's look at the third addendum and

8   then we can discuss these.

9            Now, the defendant was found guilty of Counts One,

10  Two, Three and Four of the Indictment on which he is charged.

11           Count One charged him with interstate and foreign

12  enticement to engage in illegal sexual activity under 18

13  United States Code Section 2422(a), it is a Class C felony,

14  and the statutory maximum for that crime is 20 years'

15  imprisonment.

16           Count Two is interstate and foreign transportation

17  of a minor to engage in illegal sexual activity, 18 United

18  States Code Section 2423(a).  And the statutory range there is

19  a 10-year minimum to life imprisonment; a Class A felony.

20           Count Three is a Mann Act violation, transportation

21  of an individual with intent to commit rape, 18 United States

22  Code Section 2421.  That has a maximum sentence of ten years,

23  a Class C felony.

24           Count Four is attempted sexual exploitation of a

25  child under 18 United States Code, Section 2251(a) and 18

Proceedings                                    13

1   United States Code Section 2251(e).  That charge is subject to

2   a 15-year minimum and a 30-year maximum imprisonment period.

3   And the defendant was acquitted of Counts Five, Six, Seven and

4   Eight.

5              MS. CASTRO:  Yes, Your Honor.

6              THE COURT:  So at this point we need to go over the

7   guideline calculation.

8              According to the third addendum on Counts One, Two

9   and Three -- do you have an extra copy of your addendum?  How

10  many pages is your addendum?

11             USPO SULLIVAN:  One, two -- three, Your Honor.

12             THE COURT:  I am missing page 2 in my copy.  The

13  base offense level is a 28, is it not?

14             USPO SULLIVAN:  It is, Your Honor.

15             THE COURT:  Does everyone agree with that?

16             MS. CASTRO:  Yes, Your Honor.

17             THE COURT:  That would be in the original.  It is

18  not listed on --

19             MS. DOLAN:  Oh, I see.

20             THE COURT:  It is not listed on the addendum, that

21  is listed on the original PSR.

22             MS. DOLAN:  I understand now, we are talking about

23  base offense level, not adjusted.

24             THE COURT:  Yes, I am just trying to go over

25  everything.

Proceedings                                    14

1        MS. DOLAN:  I understand that.

2        THE COURT:  So does everyone agree the base offense

3   level is a 28?

4        MS. DOLAN:  Yes, I do.  I have general objections to

5   the guidelines, so I am trying to choose my words

6   appropriately, but I agree --

7        THE COURT:  I'm sorry, general objections in

8   principal or you think that the guidelines that have been

9   promulgated are excessive or because the guidelines, as they

10   apply to this case, are improper?

11        MS. DOLAN:  Right, the first, the former.  So I do

12   acknowledge that that is the guidelines base offense level.

13        THE COURT:  Okay, all right, that is really what --

14   and I want to go step-by-step here.

15        Then there is a two-level enhancement, in that the

16   defendant otherwise unduly influenced Jane Doe to engage in

17   prohibited sexual conduct and was at least ten years older

18   than Jane Doe, as such Jane Doe was unduly influenced, and

19   there was a two-level enhancement under Section 2G1.3(b)2B.

20        Does the Government agree with that?

21        MS. CASTRO:  Yes, Your Honor.

22        MS. DOLAN:  Yes, we object to that.  The evidence, a

23   lot of which the Court didn't see, is pretty copious that

24   the -- if -- it is very difficult to make this argument, but

25   in looking at the correspondence on Facebook between Jane Doe

Proceedings                                          15

1   and Mr. Price, I have to draw the conclusion that the

2   influence that was being exerted was by her.  The Government,

3   I think, really strained to prove encouragement and

4   enticement.  This was really a plan that Jane Doe came up with

5   and was going to -- was going to follow through on no matter

6   what.

7           So I -- and repeatedly, she initiated contact with

8   Mr. Price.  She came up with the plan for her own passport,

9   which she had to figure out how to get.  Mr. Price had no idea

10  how to advise her on that.  She got herself her plane tickets

11  and came across an ocean to the United States.

12          So I don't think that the undue influence was coming

13  from Mr. Price by any means, so I would object to that.

14          MS. CASTRO:  Your Honor, as a factual matter, at the

15  time the defendant was 39 and Jane Doe was 16.  There is a

16  reason that the guidelines assume that such a large age

17  disparity would create an assumption of undue influence.

18          In any event, the notion that she was going to do

19  this no matter what is not borne out by the evidence.  What is

20  clear is that Jane Doe made references to wanting to run away

21  from home.  It is equally clear that the defendant encouraged

22  her specifically to run away to him and that he did so

23  specifically for the purposes of his own sexual gratification.

24          The Government has submitted in their sentencing

25  memorandum an exhibit where it shows the defendant's response

SAM       OCR       RMR       CRR       RPR

Proceedings                                          16

1    to mentions by Jane Doe of running away to any place other

2    than to New York to be with him.  He responded with anger and

3    withdrawal from her.  This is not some -- it is not simply the

4    case that no matter what she was going to come here to be with

5    the defendant.  He encouraged her and egged her on and pushed

6    her to do so.  And there were instances, Your Honor, where as

7    a 16-year-old she expressed anxiety and fear about going

8    through with this plan and the defendant is seen encouraging

9    her, telling her be strong, endure, go through with it.

10           So it's simply untrue that no matter what, absent

11   the defendant, this was going to be occurring.  Their age

12   difference is significant here and the notion that she was

13   encouraging the defendant is -- just flies in the face of this

14   age disparity.  This is a young girl.  It's the defendant's

15   responsibility as an adult to not take advantage of her poor

16   decisions and her vulnerability, and the record is clear that

17   he did.  He did take advantage of that.  I.

18           I think it's absolutely clear that he unduly

19   influenced her.  He found her a very vulnerable victim and he

20   exploited those vulnerabilities.

21           MS. DOLAN:  I just have to --

22           MS. CASTRO:  Your Honor, I'm sorry.

23           It is also the case that she was able to purchase

24   her ticket and fly here because the defendant sent her the

25   money.  He sent her the money and she bought her ticket the

SAM     OCR     RMR     CRR     RPR

Proceedings                                              17

1  very next day.  She was not able to get here without the

2  defendant's money.

3          MS. DOLAN:  So I just have to push back on this in

4  this case because, as unpleasant as it is, you know, as the

5  record at trial establishes, Jane Doe did obtain money from

6  someone else prior to her contact in Mexico, prior to her

7  contact with Mr. Price.  And the evidence in her computer,

8  which I discussed with the Court which was excluded from the

9  jury's consideration, included, among other things, pictures

10 of 20 to 40 middle-aged black men who, I guess, she was

11 targeting.  She had 40,000 followers on Instagram.

12         And so while Mr. Price, obviously, should not have

13 engaged in this -- in this conduct, we are just sort of piling

14 on enhancements that I don't think are borne out by a close

15 review of the evidence.

16         THE COURT:  Thank you.  I believe that the

17 requirements of the Sentencing Guidelines in connection with

18 this specific offense characteristic have been met.  I

19 overrule the objection.

20         Next, in paragraph 28 of the PSR, another specific

21 defense characteristic, as the instant offense involved the

22 use of a computer or an interactive computer service to

23 persuade, induce, entice, coerce or facilitate the travel of

24 Jane Doe to encourage and for the prohibited sexual conduct,

25 two levels are added pursuant to Sentencing Guideline

Proceedings                                              18

1    2G1.3(b)3A, two levels.

2            MS. DOLAN:  So we also object to this.  I just

3    thought of it this morning, and I did some preliminary

4    research, but I believe if I'm reading the guidelines

5    correctly, this is an original from the very first

6    promulgation of the guidelines in 1984 when the use of a

7    computer was, in fact, something that might trigger an

8    enhancement conceivably because it was a more sophisticated

9    criminal enterprise, but now it's hard to imagine any human

10   activity that does not involve a computer.

11           So, again, we would object to this sort of Pavlovian

12   increase, and I'll get to this again later when I talk about

13   the Sentencing Guidelines generally, but I just don't think

14   these enhancements are warranted.

15           THE COURT:  I understand.

16           Yes; anything from the Government?

17           MS. CASTRO:  Your Honor, I think it's more an

18   objection to the guidelines generally, as opposed to the fact

19   that it would apply in this instance.

20           THE COURT:  Yes, I would agree with that.  I also

21   point out, it may sound old-fashioned, but people could write

22   letters, they could use the telephone.  This is specific to

23   the computer, and certainly the use of a computer facilitates

24   this kind of behavior and the Sentencing Commission has not

25   removed this enhancement from the guidelines.  And until it

Proceedings                                    19

1    does, it applies.  So the objection is overruled.

2           Next, paragraph 29 in the PSR, another specific

3    offense characteristic as the offense involved the commission

4    of a sex act per Sentencing Guideline 2G1.3(b)4 two levels are

5    added.

6           Do you object to that?

7           MS. DOLAN:  This is inherent in the charges.  So

8    it's just double, triple, quadruple, quintuple punishment.

9           THE COURT:  I see.

10          MS. DOLAN:  We object.

11          MS. CASTRO:  Again, Your Honor, it reads as an

12   objection to the guidelines generally, as opposed to whether

13   or not it applies here.

14          THE COURT:  All right, the objection is overruled.

15          Then paragraph 30 from the addendum, the third

16   addendum --

17          USPO SULLIVAN:  Yes, Your Honor.

18          THE COURT:  Victim-related adjustment.  The

19   defendant knew or should have known the victim of the offense

20   was a vulnerable victim; therefore, the offense level is

21   increased by two levels.

22          Do you object to that?

23          MS. DOLAN:  Yes, I think I've previously covered the

24   reasons why.

25          THE COURT:  Right, I think you did.

SAM       OCR       RMR       CRR       RPR

Proceedings                              20

1          MS. DOLAN:  We object.

2          THE COURT:  And in your submission you covered that

3    as well?

4          MS. CASTRO:  Yes, Your Honor.

5          THE COURT:  So the objection is overruled.  There is

6    substantial basis to include this adjustment.

7          So the adjusted total offense level is now instead

8    of a 36, it is a 38.  Is that right?

9          USPO SULLIVAN:  Correct, Your Honor.

10         THE COURT:  You agree, the Probation Department

11   agrees with that?

12         USPO SULLIVAN:  Yes, Your Honor.

13         THE COURT:  And the Government agrees with that?

14         MS. CASTRO:  Yes, Your Honor.  I apologize if I

15   missed it.  Did we address the obstruction enhancement?  I

16   believe it's paragraph 32 of the original PSR.

17         THE COURT:  I'm sorry, 32.  I did not address it.

18   It is here, though.  Let's go back to 32.

19         In paragraph 32 there is an enhancement for

20   obstruction of justice.  The defendant willfully obstructed or

21   impeded or attempted to obstruct or impede the administration

22   of justice with respect to the investigation, the prosecution

23   or sentencing of the instant offense of conviction and the

24   obstructive conduct related to the defendant's offense of

25   conviction and any relevant conduct or closely-related

SAM      OCR      RMR      CRR      RPR

Proceedings                                    21

1  offense.  Therefore, two levels are added pursuant to the

2  Sentencing Guideline 3C1.1.

3          You object to that?

4          MS. DOLAN:  We object to that.

5          THE COURT:  Right.  And the reason for that is?

6          MS. CASTRO:  Your Honor, as presented in one of the

7  jail calls submitted into evidence at trial, the defendant is

8  heard reaching out to his mother and asking her to contact

9  someone who he referred to as *that person*.  In doing so, he

10 provided an Australian phone number.  It did turn out to not

11 be the correct number for Jane Doe, but in any event he's

12 heard telling his mother that she should reach *that person* and

13 tell *her* not to cross the pond for any reason and, if need be,

14 to use her mental status to avoid it.

15         In addition to that, Your Honor, in an August 28th,

16 2017 submission regarding the motion to suppress, the

17 defendant made certain claims regarding whether or not he

18 provided consent with respect to the seized telephones in this

19 case.  He said that he had not and, of course, when documents

20 with his signature showing that he did provide consent ran

21 counter to that.  He also provided the passwords for those

22 phones, and so it further belies the notion that he was not

23 involved in providing consent to his phones.  The Government

24 submits that there is ample basis for the obstruction

25 enhancement.

Proceedings                                    22

1        THE COURT:  Do you want to say more on that?

2        MS. DOLAN:  Only that it was Jane Doe who destroyed,

3   attempted to wipe her computer.

4        And as to the question of consent, I think that

5   would fall under the umbrella of the motion to suppress that

6   we just made.  So I wouldn't consider it an adequate basis for

7   the obstruction enhancement.

8        THE COURT:  All right, I am overruling the

9   objection.

10        And so going back to the totals, the adjusted

11   offense level is a 38, to which the Government agrees and

12   Probation agrees and the defense objects.

13        MS. DOLAN:  That's correct.

14        THE COURT:  Okay.  So that is Counts One, Two and

15   Three.

16        Count Four, on Count Four the base offense level is

17   a 32.  There is an additional two levels for commission of a

18   sex act, and there is an additional two levels for use of a

19   computer, and there is an additional two levels for a

20   vulnerable victim, and an additional two levels for

21   obstruction of justice.

22        So all of the objections that the defense had with

23   respect to those enhancements of Counts One, Two and Three are

24   also recognized by the Court.

25        MS. DOLAN:  Thank you.

```
                        Proceedings                    23
```

1            THE COURT:  For Count Four and the objections are

2     overruled.

3            MS. DOLAN:  Thank you.

4            THE COURT:  All right.

5            So the adjusted offense level for Count Four is a

6     40, to which the defense objects.

7            Does the Government agree with that calculation?

8            MS. CASTRO:  Yes, Your Honor.

9            THE COURT:  And.

10           USPO SULLIVAN:  Yes.

11           THE COURT:  And Probation agrees as well.  So the

12    adjusted offense level for Counts One, Two and Three is a 38;

13    for Count Four, the adjusted offense level is a 40.  The

14    multiple-count adjustment based on those adjusted offense

15    levels is two units and the greater offense level is a 40.  So

16    the two units are added and the combined adjusted offense

17    level is a 42.

18           The defense objects?

19           MS. DOLAN:  For all the reasons previously stated.

20           THE COURT:  Right.  And the Government agrees?

21           MS. CASTRO:  Yes, Your Honor.

22           THE COURT:  As does Probation?

23           USPO SULLIVAN:  Yes, Your Honor.

24           THE COURT:  As does the Court.

25           So based on a total offense Level 42 and -- oh, is

Proceedings                              24

1    there any comment on the criminal history category?

2            MS. DOLAN:  Nothing to add.

3            MS. CASTRO:  No, Your Honor.

4            THE COURT:  All right.

5            And the Probation has determined the criminal

6    history contact the category is a VI?

7            USPO SULLIVAN:  Correct, Your Honor.

8            THE COURT:  And the Government agrees with that?

9            MS. CASTRO:  Yes, Your Honor.

10           THE COURT:  And you have nothing to do add?

11           MS. DOLAN:  Nothing to add.

12           THE COURT:  The Court agrees.

13           So with a Category VI, criminal history category,

14   and a total offense level of 42, the defendant's guideline

15   calculation is 360 months to life in prison.

16           And that's the Court's determination, which brings

17   us to the next stage of this process.

18           As I said before, let me just make it clear:  All

19   motions that have been made, but not acted upon on the part of

20   the defense, are denied.

21           And the Government has no open motions, does it?

22           MS. CASTRO:  No, Your Honor.

23           THE COURT:  All right.

24           So the next step in the process is to determine the

25   appropriate sentence, taking into account all of the factors

Proceedings                                        25

1    that are relevant under 18 United States Code Section 3553(a).

2    In order to impose a sentence that is sufficient, but not

3    greater than that necessary, to fulfill the purposes of

4    sentencing.

5            So let's start with you, Ms. Castro.

6            MS. CASTRO:  Thank you, Your Honor.

7            Your Honor, in the defendant's sentencing

8    submissions a lot of terms are used to describe his conduct

9    here.  They refer to his crimes, for example, as an ill-fated

10   love affair.  Your Honor, this was not a romance.  This was a

11   39-year-old man who took advantage of an incredibly vulnerable

12   16-year-old girl for his own sexual gratification and

13   financial gain.  As laid out in the Government's sentencing

14   submission, this is a serious offense.  It should be sentenced

15   accordingly.

16           The defendant raises some points as to what might be

17   considered mitigation here.  The Government submits that none

18   of them hold up.

19           Principally, I'd like to address the notion of Jane

20   Doe's participation in the offense.  Your Honor, this argument

21   simply takes or seeks to take some of the blame away from the

22   victim -- I apologize, away from the defendant and lay it at

23   the victim's feet and it should not be indulged here.  As laid

24   out throughout the Government's sentencing submission, there's

25   ample evidence within the record that Jane Doe was

Proceedings                                          26

1   particularly vulnerable and susceptible to the manipulation of

2   someone in the defendant's shoes.

3            Any participation, despite being legally irrelevant

4   and impossible as a defense under the law, is simply a symptom

5   of the very same characteristics that rendered her vulnerable

6   to his actions.

7            The sentence here should reflect that the

8   exploitation of children, period, under any circumstances

9   should not be tolerated.  And the notion of Jane Doe's

10  participation as mitigation is simply unacceptable.

11           Defendant also raises the notion of Jane Doe's age

12  as potential mitigation, suggesting that because they maintain

13  the age in Australia, of consent in Australia would be 16,

14  that the Court should deem it mitigation in this instance.

15  The record is clear that the defendant was well aware of Jane

16  Doe's age and simply did not care about it.  He even stated in

17  one instance that he did not care about the fact that it was

18  illegal for him to have sex with her.  One of the goals of

19  sentencing, Your Honor, is to promote respect for the law.

20  Deeming the law of other jurisdictions, particularly in the

21  face of a defendant who explicitly said he didn't care about

22  breaking the law, to be deemed any kind of mitigation here

23  runs counter to that aim.

24           Further, the notion that Jane Doe's age would have

25  somehow made all of the defendant's conduct legal if she had

Proceedings                                          27

1   turned 17 is also untrue.  The defendant was convicted, in

2   addition to the transportation crimes, of attempting to

3   exploit a minor.  She would have -- that offense would have

4   applied even if Jane Doe had been 17.  So it's not simply the

5   case that her age, if some months had been added to the

6   timeline here, would have completely invalidated the offenses

7   of conviction here.

8           The defendant also discusses the notion that his

9   conduct, that the conduct here was aberrant behavior by the

10  defendant.  Now, it's true that this is the defendant's first

11  sex offense, but the notion that this is aberrant behavior is

12  completely belied by the defendant's criminal history.  In

13  fact, it's entirely consistent with someone who's acquired a

14  criminal history category of VI.  The defendant has sustained

15  multiple convictions throughout the course of his life, and

16  this conviction is consistent with a notion or an individual

17  whose record reflects indifference towards the law and

18  indifference towards a potential consequences of his action.

19          Your Honor, particularly concerning to the

20  Government is the defendant's complete inability to take any

21  sense of responsibility for his actions here.  And in the

22  defendant's submission he describes the circumstances that led

23  to this crime as him trying to help people.  He says that his

24  biggest flaw is his big heart.

25          Your Honor --

Proceedings                    28

1          THE COURT:  His big?

2          MS. CASTRO:  Heart.

3          THE COURT:  Heart.

4          MS. CASTRO:  -- in a submission from Jane Doe's

mother, it's clear that this conduct has continued to have an

impact on Jane Doe's life and will for years to come.  She

expressed that Jane Doe could not return to high school due to

mental health issues following this.  Someone who's 16 years

old is now no longer in high school as a result of the

defendant's actions.  She also says that she has undergone

intensive psychological treatments with a professional

psychologist.  She's also received treatment from a forensic

psychiatrist.  She suffered loss of friendships and the

ability to socialize.

15          Your Honor, these are all factors that will continue

to impact this girl's life for the rest of her life, not to

mention the impact that the defendant's crimes had on her

family.  Her mother describes recurring flashbacks of her

daughter disappearing.

20          Now, the Government objects vehemently to any notion

that Jane Doe's conduct should be held against her and

credited to the defendant, but even setting that aside, what

of the family's impact here?  Are we to blame them in some way

and also not refer to that in considering the defendant's

actions here?

Proceedings                                    29

1          His conduct will continue to affect Jane Doe's

2     family for years to come.  And in the face of that, the

3     defendant shows little remorse.  In fact, I am going to

4     rephrase that, the defendant shows no remorse.  He maintains

5     he was trying to help.  And that is completely belied by the

6     record.

7          This defendant's plan was to bring a 16-year-old

8     girl who he knew to be vulnerable for a number of reasons.  He

9     was well aware of Jane Doe's struggles.  His plan was to bring

10    her here for his sexual gratification and to put her on a pole

11    as a stripper for his own financial gain.  He's seen bragging

12    about it to his friends that he's about to be rich because

13    this young girl is going to come be a stripper in the United

14    States.  This is not the conduct of someone who is trying to

15    help.

16          Your Honor, I would also like to address the report

17    of Dr. Kreuger that was submitted by the defendant.  The

18    Government submits that it should be disregarded in its

19    entirety.  The conclusion by Dr. Kreuger rests in large part

20    on the assessment that if the defendant were to receive

21    substance abuse treatment, he would be at a significantly

22    lower risk of re-offending.  That is difficult to take at its

23    face given a comparison between the statements from the -- or

24    the responses from the defendant in his PSR interview as

25    compared to his discussions with Dr. Kreuger.

SAM      OCR      RMR      CRR      RPR

Proceedings                                    30

1        The defendant states to Dr. Kreuger, in a typical

2   fashion of his tendency to minimize his conduct, that he was

3   under the influence of a number of drugs for the entirety of

4   his interactions with Jane Doe.  That, of course, is an

5   incredible claim.  The defendant was engaging with Jane Doe on

6   a daily basis from, at least, January 2017 to May 2017.  It is

7   incredible to believe that the defendant was at all times

8   responding to substance abuse.

9        In any event, the defendant's claims with respect to

10  substance abuse as reported by Dr. Kreuger are significantly

11  overblown.  The defendant in his PSR interview denied daily

12  use of drugs or of marijuana.  He denied daily use of alcohol.

13  He mentioned that he had stopped using heroin in 2015.  He

14  didn't mention cocaine at all.  He did refer to crack cocaine,

15  and admitted he had used that through, at least, March 2017.

16  But, Your Honor, these inconsistencies render Dr. Kreuger's

17  conclusions unreliable.

18       Dr. Kreuger's conclusions are also internally

19  inconsistent.  He concludes, for example, that the defendant

20  does not suffer from a disorder that is characterized, and I

21  am going to mess up the pronunciation of this disorder, Your

22  Honor, ephebophilia.  Your Honor, it's described as a

23  problematic tendency toward sexual fantasies about young

24  teenagers.  And as Dr. Kreuger puts it, in order to qualify

25  for this disorder, the defendant would have to have sustained

Proceedings                                              31

1    fantasies for at least six months.

2          Your Honor, we know by the defendant's admission

3    that he met Jane Doe in October of 2016 online.  You've seen

4    the defendant's discussions with Jane Doe from, at least,

5    December 2016 to April -- I apologize, yes, December 2016 to

6    April 2017.  Those discussions contain recurring references

7    from the defendant about his sexual fantasies with respect to

8    Jane Doe, a teenager, and this occurred for more than six

9    months.  So the notion that Dr. Kreuger can acknowledge all of

10   these points within his report and then simultaneously

11   conclude that the defendant doesn't suffer from this disorder,

12   again, invalidates Dr. Kreuger's conclusions.

13         I'd also like to address defense counsel's position

14   with respect to restitution.

15         Your Honor, the victims of this crime, Jane Doe and

16   her family as her guardians, are entitled to restitution under

17   the law.  Jane Doe's mother has submitted an affidavit of loss

18   outlining what the family has incurred as a result of the

19   defendant's conduct and they are entitled to restitution in

20   the amount set forth in that affidavit.

21         Briefly, I'd like to also address forfeiture.  The

22   Government is requesting forfeiture of two cell phones which

23   are identified in the Indictment.  One was being used by the

24   defendant at the time of his arrest, and the second he had

25   provided to Jane Doe for her use after, we understand it,

Proceedings                                          32

1   after their arrival in New York.

2          The Government submits that both of these items are

3   instrumentalities of the crime.  For example, the defendant's

4   cell phone is seen to have a search history where he's looking

5   up directions and inquiring about hotels in the locations

6   where he traveled with Jane Doe between California and

7   New York, their cross-country trip back home.  It is clearly

8   an instrumentality of the offense.  The phone for Jane Doe,

9   Your Honor, we submit was used as a further -- to further the

10  defendant's control of Jane Doe when she was here.  He brought

11  her here so that he could have sex with her, which is a crime,

12  and the Government submits that Jane Doe's phone was another

13  means by which he continued to control her after her arriving

14  here.  Indeed, the communications on Jane Doe's phone are

15  principally, if not exclusively, to the defendant.

16         In conclusion, Your Honor, the defendant's -- the

17  defendant's inability to take responsibility for his actions

18  here, coupled with his significant criminal history, create a

19  great deal of concern with respect to recidivism.  It's

20  particularly important with respect to this defendant to

21  specifically deter future conduct with him.  And with respect

22  to his arguments of mitigation, it is important to set forth a

23  clear message that under no circumstances should his conduct

24  be tolerated.  And much less should his conduct be deemed

25  lessened in any way by the very facts that made Jane Doe so

Proceedings                                          33

1    incredibly vulnerable to his manipulation of her.

2          So for this reason, Your Honor, the Government

3    submits that a sentence well above the applicable mandatory

4    minimum as is contemplated by the guidelines would be

5    appropriate here.

6          THE COURT:  Thank you.

7          Ms. Dolan.

8          MS. DOLAN:  If I could do it from the table?

9          THE COURT:  Sure, that's fine.

10         MS. DOLAN:  Thank you.

11         So I'll start with Jane Doe's participation.

12         The phrase willing participant actually comes from

13   Ms. Merkl during one of my discussions with her about a

14   potential plea.  I wouldn't want the Court to be under the

15   misapprehension that Mr. Price would not have considered a

16   reasonable -- what we believe would have been or what he was

17   able to stomach as a reasonable plea offer.  I was begging the

18   Government for that, and I think Mr. Price, I think I can say,

19   what's the best way to phrase this, he would have been more

20   than welcomed to considering an offer that, I think, would

21   have been more in the realm of something that he could go on

22   and live with.

23         So I think that the whole thrust of the Government's

24   sentencing arguments are not close to what we see on this side

25   of the courtroom.

Proceedings                          34

1          And I think the evidentiary support that I can offer

2     in favor of that, of that argument, is that I think the

3     Government's statement that Mr. Price's principal motivation

4     was that Jane Doe would earn money as a stripper is just

5     totally wrong.  I think if you review the thousands of pages

6     of communications between these two people, the principal

7     motivation was loneliness.

8          Now, the Government will come back and make all the

9     arguments that it's just made about the age disparity and

10    whatnot and I am not here to argue that, but the human reality

11    is, I think, evidentiarily borne out there.

12         Now, I think --

13         THE COURT:  Loneliness meaning that he could not

14    find an appropriate friend in Queens?

15         MS. DOLAN:  I am loath to use the appropriate.  I

16    pass no judgment on what was --

17         THE COURT:  Appropriate to him, I am not saying

18    appropriate to you or to me, but the last time I looked at the

19    census there were 2.3 million people who lived in Queens, more

20    than half of whom are women.  So it is not as if he is in a

21    town of 20 people in the middle of Nebraska.

22         MS. DOLAN:  Well, if that had been the case, then

23    any one of those women could have become strippers, too.  So I

24    don't think that that was the primary motivation, nor do I

25    think that there is evidentiary support.

Proceedings                              35

1       My role here is to principally bring out what I

2    think is the other side of the evidence.  And I think we've

3    reached a point at this stage where I can say that I do

4    believe that the Government's -- the Government's framing of

5    the facts of this case, if not misleading, are at least

6    somewhat disingenuous.

7           As I've said before and as we argued at trial, there

8    were undulations to this relationship that typify any human

9    interaction and a significant portion of their interactions

10   were initiated by Jane Doe.

11          What we didn't go into at trial or in our sentencing

12   submission, because, frankly, I didn't think it would be

13   necessary based on the facts, was that Jane Doe was repeatedly

14   begging Mr. Price for a baby.  So I don't know what was going

15   on there or what her motivation was, but I do think that her

16   willing participation is a factor that weighs against -- that

17   weighs toward asking what responsibility this family -- what

18   was going on in this family?  And I think there are motivating

19   factors there that we simply are not aware of.

20          THE COURT:  *This family*, meaning Jane Doe's family?

21          MS. DOLAN:  Her mother was apparently, if I

22   understand it correctly, hospitalized for attempted suicide as

23   soon as she learned that Jane Doe had left the country and had

24   run away, which is, by the way, another reason why I don't

25   think that attributing $40,000 worth of not working for a year

Proceedings                                    36

1   to quote/unquote take care of Jane Doe would necessarily be

2   appropriate or warranted.

3          But the bottom line here is that something was

4   driving Jane Doe out of her home in Australia and she was

5   trying to escape it and she was going to do it at any cost and

6   so she did.  And Mr. Price has been convicted, but

7   nevertheless, the one picture that we have of them as the

8   Court will remember from trial, Jane Doe is smiling.  And it

9   certainly doesn't sound like she had a very happy home life.

10  It is unfortunate that she ended up here in these

11  circumstances, but here we are.

12         Dr. Kreuger's report was not submitted as

13  mitigating.  I don't think it's a good report.  If the

14  Government wants it out, I partially join in that application.

15  I didn't submit it to try to make the Court feel sorry for

16  Mr. Price.  I don't think it's mitigating in that respect.

17  What I think it does identify is two things.

18         The first is the role not only that drugs played in

19  Mr. Price's criminal history, but the role that drug treatment

20  would play in his rehabilitation as an appropriate social

21  mechanism to deal with the problem here, rather than extending

22  incarceration.

23         And the second reason that I submitted that report,

24  which I don't think the Government has sufficiently rebutted,

25  is that there really -- I wanted to have some sort of

1  psychological evidence concerning whether Mr. Price, you know,

2  is a pedophile.  And we don't have any information that this

3  was anything other than aberrant behavior.  And in typical

4  fashion, instead of producing some sort of psychological

5  evidence or psychological analysis or expert testimony or

6  expert opinion, the Government just puts forth conjecture on

7  what their interpretation of psychological realities are.

8          Which brings me to the last thing, the guidelines,

9  just as a general matter.  I've already argued that they're

10 repetitive.

11         Like the Government's arguments, you know, here I

12 am, I submitted -- once again, I've submitted the Brennan

13 Center report.  The Government just ignores it.  We have

14 tomes' worth of social science and statistics indicating that

15 the guidelines are too high.  We all know it.  The reason that

16 I submitted -- cited Judge Gwin's Harvard Law Review article

17 from, I think, 2015 is because he actually surveyed 22 juries

18 in Ohio, a swing state, and asked them what sentences should

19 be in all of those 22 cases.  And what Judge Gwin found was

20 that the guidelines were a minimum of two, and often

21 four-and-a-half, times at a median point higher than they

22 ought to be.

23         You say, well, why does that matter, what difference

24 does that make?  And the reason is because the United States

25 Congress directed the Sentencing Commission back in the early

Proceedings                                    38

1   1980's to consider community sentiment when promulgating the

2   guidelines.  They disregarded that mandate and instead looked

3   at 10,000 sentences from judges who are not community.  We

4   know now, after Judge Gwin's findings, what the community

5   really thinks of the guidelines and we know that they are at

6   least twice, and at least in many cases four-and-a-half times,

7   higher than they should be.

8              So that is certainly not to abdicate responsibility,

9   but rather to the point of, well, what's an adequate sentence?

10             If you go to the low end of that, that's 10 months,

11  which is the lowest mandatory -- the lowest applicable

12  mandatory minimum in this case.

13             So I think that that is more than sufficient, even

14  if the Court were to disregard all of the other arguments that

15  I've made.  And let's be clear, when I'm talking about the age

16  of consent in Australia, first of all, I am not talking about

17  the child bride in Saudi Arabia or something like that or a

18  jurisdiction where the age of consent is 13 or 14.  We are

19  talking about Australia where the age of consent is 16, as it

20  is in many states in this -- in this nation.

21             And so in framing the whole context of willing

22  participation and what's an appropriate sentence, I do think

23  that that is a factor that the Court may take, should take

24  into consideration.  But even if we were to disregard all of

25  that, the point that I'm making with the guidelines is that

Proceedings                                          39

1    they are twice, at least twice, as high as they ought to be.

2    And so for those reasons, 15 years is more than sufficient as

3    a deterrent and for every other purpose that criminal

4    sanctions are applicable.

5              THE COURT:  Thank you.

6              MS. MERKL:  Your Honor, if I may be heard just

7    briefly?

8              MS. DOLAN:  Oh, I'm sorry, I just realized -- I'm

9    running up against my flight here, but I can't help myself.

10             I do think we need, at least, a hearing on the

11   restitution issue, if that is going to be imposed, partly

12   because we are going to have to have some expert support.

13   We'd have to have evidentiary support.  And I just don't think

14   a demand is sufficient, particularly in light of the

15   psychological complexity and all of the issues that I

16   previously discussed.  I mean she is asking for lost wages, so

17   that, I think, needs to be further evaluated and we need an

18   opportunity to challenge it.

19             MS. MERKL:  Your Honor, if I may just briefly be

20   heard with regard to the defense argument that Jane Doe here

21   was a willing participant.

22             In the context of conversations over the course of

23   this case, including, yes, in discussions as to whether or not

24   Mr. Price would be amenable to a plea disposition, Ms. Dolan

25   has repeatedly made the argument that if anyone was enticing

SAM      OCR      RMR      CRR      RPR

Proceedings                                         40

1    anyone, it was Jane Doe attempting to entice the defendant.

2              And, Your Honor, that is exactly the issue here.

3    This is a 16-year-old girl with a history of psychological

4    problems who wants out of her life.  And like many 16-year-old

5    girls, she thinks that if she completely escapes her life and

6    creates a new life maybe everything will be better for her and

7    her psychological situation could be restored.  I really think

8    that's what's motivating her.

9              Whether or not I used the frame *willing participant*,

10   I don't know, I don't have sufficient recollection of it; but

11   there is no context in which I believe that to be exculpatory

12   as to this defendant.

13             Did she get on the plane willingly?  Yes.

14             Did she engage in Facebook chats with him willingly?

15   Yes.

16             I never was arguing and haven't argued ever that

17   this was a case where he was holding a gun to her head,

18   threatening her, forcing her; none of that.  And to that

19   extent she was a willing participant in the actions that led

20   to this offense, but was she a knowingly and intentionally

21   consenting voluntarily mature adult person choosing to engage

22   in those actions?  Absolutely not, and that is at core of the

23   problem here.  So whether or not I used that phrase is of

24   absolutely no moment.  Clearly it's deserving of no weight.

25             One other thing I wanted to address with regard to

Proceedings                                    41

1    the motivation here, Ms. Dolan made a comment about, who knows

2    what is going on with that family?  This girl wanted to get

3    out.  The defendant knew quite a bit about what was going on

4    with this girl's family because they discussed it extensively

5    on Facebook.  And the entirety of their Facebook chat was

6    entered into evidence as Government Exhibit 21 at trial.  And

7    she told him repeatedly how her mother had had some mental

8    health issues, how her brother had attempted to kill himself

9    in very recent proximity to the date of her corresponding with

10   the defendant and, ultimately, coming to travel.

11        She even sent the defendant pictures of like the

12   scene in her house when her father was like dealing with her

13   brother's suicide attempt.  And he was very acutely aware that

14   she was coming from a home where there were mental health

15   issues and there was stress and tension in the family and she

16   wanted an escape.  He provided her that escape.  He sent her

17   pictures of fantastical apartments hoping to give her a vision

18   of a better life and getting her to come here; coupled with

19   the money, that's what made it happen, Your Honor.

20        So, yes, she was willingly getting on the plane

21   because she had a lot of issues in her life, but that does not

22   mean that she was knowingly and voluntarily consenting to

23   statutory rape because, as you know, that's not possible.

24        THE COURT:  There is also the issue of the

25   Government's position is that the defendant was engaging in

1  technically pedophilia.

2          Can you address that because it has just been

3  raised?

4          MS. MERKL:  Sure, Your Honor.

5          I think that the import of the Kreuger comment, and

6  the comments about the Kreuger report that Ms. Castro made

7  earlier were that it was internally inconsistent.  He

8  described that condition as somebody with a sustained interest

9  in somebody who is underage of six months or more.  Meanwhile,

10  the evidence in this exact case shows that he had a sustained

11  interest in somebody who was underage for six months or more.

12  There was, in addition to the photographs that were exchanged,

13  Your Honor, there was substantial evidence that they were

14  engaged in video chats.  And the texts surrounding those --

15  the lead-up to when they would actually have like a realtime

16  face connect via the sort of video link that is available on

17  Facebook, indicates that the defendant was getting antsy to

18  see what he termed at times *his pussy*.

19          So it is clear, the Government submits, from the

20  evidence in the case, including the Facebook chats, that they

21  were engaged in sort of this realtime video streaming sex

22  display and that the defendant was seeking it out.

23          And so for Dr. Kreuger to conclude that the

24  defendant doesn't demonstrate that characteristic suggests to

25  the Government that he is simply not aware of the evidence in

Proceedings                                    43

1    this case.

2          THE COURT:  Let me just ask, I've heard the

3    defense's position on the sentence.

4          Does the Government have a position on the sentence

5    irrespective or taking into account with the guideline

6    calculation?

7          I would like to know what the Government's position

8    is, if any, beyond the guidelines.

9          MS. CASTRO:  Your Honor, our position is principally

10   that 15 years is not enough here.  The guidelines contemplate

11   significantly higher sentence for a reason.  It's been

12   enhanced for things such as the defendant's obstruction, the

13   fact that there was a vulnerable victim here.  These are valid

14   enhancements to be applied here.

15         And with respect to the defendant's potential for

16   recidivism, the Court need look no further than the

17   defendant's own inability to take responsibility for his

18   conduct.  He does not believe he did anything wrong.  Period.

19   This cannot be tolerated, and that speaks volumes of the

20   likelihood that he would re-offend, regardless of age.  He

21   didn't care about Jane Doe's age.  The Government submits that

22   there should be a sentence significantly above the 15-year

23   mandatory minimum because this defendant, as we stand here

24   today, still shows no remorse.

25         THE COURT:  All right, thank you.

Proceedings                                   44

1        All right, anything else from you, Ms. Dolan, before

2   I turn to your client?

3        MS. DOLAN:  That's just not what I see from

4   Mr. Price, even after -- I can say that even after all, it's

5   just not -- it's just not -- it's just not the person that I

6   see.  And I think part the reason that we are seeing a lot of

7   these filings and so forth is because the guidelines sentence

8   is so ridiculously high for this particular type of conduct.

9   I mean that argument about -- I mean 16 is legal in many

10  states in this nation, and in Australia.

11       So like the whole argument about Dr. -- we all know

12  what a child porn case really looks like, and we've all seen

13  them, and this is not the heartland of what Congress was

14  thinking.  That is just my basic point.

15       THE COURT:  All right.

16       MS. DOLAN:  And I think the Court apprehends that

17  argument.

18       THE COURT:  All right, thank you very much.

19       All right, before I sentence you, Mr. Price, is

20  there anything you would like to say?

21       You can stand up if you like.  Thank you.

22       THE DEFENDANT:  Yes, Your Honor, I do have something

23  to say.

24       I do have remorse, but what happened here is

25  something that was pushed upon me.  When I tried to stop

SAM     OCR     RMR     CRR     RPR

Proceedings                                        45

1    talking to Jane Doe, she called me a few hours later said:  I

2    tried to kill myself, I thought you wasn't talking to me no

3    more.

4            I said:  Why would you do that?  What's wrong with

5    you?  Are you okay?  Is there anything that I can do from here

6    to help you cope with whatever you're going through?

7            No, no, no.  I always do this.  I always do this.

8            I said:  Well, don't do this because of me, don't

9    try to kill yourself because of me.  I don't -- I don't want

10   this type of burden on my shoulders.

11           She said:  Oh, well -- um, well, you got it.

12           So, you know, this is -- this is something where I

13   know I was wrong, but the time and -- and the -- and the

14   charges, I just think it's just too much because the only

15   thing that I actually did was help her escape a life that she

16   felt was -- was not right for her.

17           She told me:  Oh, I'm getting beat up by my brother.

18   I'm getting beat up by my brother.

19           I'm like:  Damn, that's bad.  Is he okay?  Is the

20   police gonna come?

21           No, no, they're not gonna come.  They're not gonna

22   come.

23           And I'm -- you know, I felt like I was a rock and a

24   hard place because I had a job.  I was working.  I didn't -- I

25   didn't need no girls.  I don't have a problem with women at

Proceedings                                          46

1   all.  At all.  I never did.  I have two daughters by two

2   different women in two different countries.  I'm -- I'm -- I

3   was doing all right.  I was working every night.  I was

4   working every day.  My boss when asked by Probation would he

5   take me back, he said in the blink of an eye because I'm not a

6   bad person and I never was.

7           What is going on in this -- in this courtroom with

8   this case, I just think it's just ridiculous.  It's just

9   ridiculous.  The only thing that I actually did was try to

10  help this girl.  And I never, never, never initiated sex.  I

11  never initiated sex with this girl.  When I saw her, I was

12  like, yeah, this is a kid.  All I tried to do was help her.  I

13  could not at that point in time take her back to the airport

14  or tell her to go about her way because she was vulnerable

15  like they said, but it wasn't vulnerable to the point to where

16  I was trying to use her or do anything to hurt this girl.

17  That was never in my intentions.  I have two little girls.

18  The only thing that I tried to do with this girl was help her.

19          When it got out of hand and everything else

20  happened, there was nothing else that I could do.  There was

21  nothing that I could do but try to -- but try to -- try to

22  dampen the blow.  Try to -- try to -- try to help myself by --

23  by thinking about a way to get out of it because I don't -- I

24  don't think that -- I don't think that what time is -- what

25  time is being talked about is warranted for the actions that I

SAM      OCR      RMR      CRR      RPR

Proceedings                                    47

1   did.  She was having sex with -- I don't think -- I don't

2   think that the charges, the time, I just don't think it's

3   right.

4        If I would have let -- if I would have let that girl

5   do whatever she wanted to do, she would have -- she would have

6   probably put her death on my hands.  So -- so I thought that I

7   was doing something to help her at all costs.  I would never

8   want nobody's death to be on my hands whether she's in Japan

9   or if she's in Switzerland.  She was talking to me every day.

10  So yeah, she was a friend, and I tried to do the best I can to

11  help her get out of the situation that she thought was the

12  worse thing that -- that was a part of her life.

13        THE COURT:  Well, the Court is obligated to review

14  certain factors in connection with the imposition of sentence.

15  Among them are the need to reflect the seriousness of the

16  offense, to promote respect for the law, and to provide just

17  punishment for the offense, to afford adequate deterrence to

18  criminal conduct, to protect the public from further crimes of

19  the defendant, to provide the defendant with needed education

20  or vocational training, medical care, other correctional

21  treatment, and as set forth in 18 United States Code

22  Section 3553(a).

23        The defendant is in Criminal History Category VI.

24  He started his career of crime at the age of 17 by driving a

25  motor vehicle at over 70 miles an hour and skidding into a

Proceedings                                      48

1    tree killing someone else in the car and then pleading guilty

2    to negligent homicide.  He moved on at age 18, the possession

3    of a concealed weapon in New Jersey, then to criminal

4    possession of a controlled substance in Queens, then to

5    attempted criminal attempt in Queens, then to assault in the

6    third degree in Queens at age 28 where he threw a chair at his

7    former common law wife causing scratches and bruising the

8    victim's back.  And then at age 30 he was convicted of

9    criminal contempt in connection with going to his wife's, a

10   romantic partner's place of business and screaming at her.

11   Also, reckless driving, resisting arrest, and unlawful fleeing

12   in a separate case.  And then at age 31 resisting arrest, and

13   then at 32 resisting arrest.  And at age 37 disorderly

14   conduct.

15            So that is just a thumbnail sketch of the

16   defendant's criminal history.  To say it's Criminal History

17   Category VI is to say a lot.  There are very few defendants

18   that I sentence in Criminal History Category VI.  So we can

19   start with that.

20            And so the very idea that the defendant was just

21   trying to help is just rejected by the Court.  The defendant

22   sent money to this person living in Australia, who he knew to

23   have difficult psychological problems, to bring her to the

24   United States, drive her across the United States, and then

25   shack up with her in his parents' basement in Queens.  And the

Proceedings                          49

1    purpose of this was to help, according to the defendant.  She

2    forced him to do it.  She threatened that she might do injury

3    to herself.

4          It would seem to me the thing to do if someone did

5    something like that is to call the authorities, if you feel

6    that strongly call the authorities halfway across the world

7    and tell them that this is a person who needs an intervention,

8    not a person who needs a flight of 10,000 miles to Los Angeles

9    at the age of 16.  Certainly, a 39-year-old man knows better.

10   A 39-year-old man who has two children who's been in a number

11   of relationships knows better.  There is no excuse.

12         And the idea that, sir, you would come to this court

13   and say you were just trying to help her because she could not

14   help herself is rejected totally by this court; totally.

15   There needs to be, in my opinion, a sentence imposed that acts

16   as a deterrence to this kind of conduct.  To me deterrence is

17   the most important element or factor in this case.

18         This defendant has had many chances to mitigate, to

19   turn his life around, to be a good citizen.  There is a point

20   at which one has to say this is just not happening.  And the

21   victim in this case is further injured beyond what her

22   condition was when she left Australia, is further injured by

23   the actions of this defendant.  You don't just get to play

24   around with people for your own satisfaction and leave the

25   people further injured, further tainted, further harmed.  So I

Proceedings                                      50

1    don't buy it.  It is unacceptable.  And, frankly, I agree with

2    Congress, not all the time, but I will tell you I agree with

3    them about this guideline and with the Sentencing Commission

4    because the best way to deter this kind of behavior is to tell

5    adults that if you do it, you are going to pay.  And today is

6    your day of reckoning.

7              So, you may stand to be sentenced.

8              Are you ready to be sentenced?  Are you ready to be

9    sentenced?

10             THE WITNESS:  No, I still would like -- I still have

11   something to say.

12             THE COURT:  What would you like to say?

13             THE DEFENDANT:  You just --

14             THE COURT:  He wants to say something.

15             THE DEFENDANT:  You described my criminal history.

16   In '95 there was a car accident.  The guy in the car had a

17   gun.  He said:  Don't stop, Sean, Imma shoot you.  The car --

18   I sped off, the car flipped over.  Yes, that did happen.

19             After that, after that you mentioned -- you

20   mentioned something about another case that I had where I

21   resisted arrest.  Oh, yeah, I went to go see my daughter.  The

22   mother of my child told me my daughter was sick.  She said,

23   You should come see her.  So what I did was I got in my car

24   and I went to go see her.  What happens was she calls the

25   police.  So yes, I ran because I was guilty of nothing, but

Proceedings                                          51

1    trying to take care of my daughter.

2             After that resisting arrest, I was not -- I was

3    arrested for resisting arrest because I was running because I

4    wasn't guilty of anything.  I'm -- I'm not a man that -- that

5    shuns from responsibility or doesn't know when he does

6    something wrong.  I always know when I do something wrong and

7    when I do, I plead guilty because I know that I did something

8    wrong.

9             But in this case --

10            MS. DOLAN:  You've already said that.

11            THE DEFENDANT:  But in this instant she told me she

12   was gonna kill herself.  I didn't know -- I didn't know -- I

13   didn't know what to do.  Maybe that's my fault and I'll take

14   that, but I didn't know what to do when she told me that and

15   that wasn't the first time she told me that.  Take

16   responsibility for the charges and the time, I guess -- I

17   guess -- I guess I can't say nothing else.

18            THE COURT:  Are you ready to be sentenced?

19            THE DEFENDANT:  Yes.

20            THE COURT:  All right.

21            On Count One interstate enticement to engage in

22   illegal sexual activity, I sentence you to 240 months in the

23   custody of Attorney General.  On Count Two, interstate and

24   foreign transportation of a minor for illegal sexual activity,

25   I sentence you to 420 months in the custody of the Attorney

Proceedings                                      52

1    General.  On Count Three, Mann Act, intent to rape, I sentence

2    you to 120 months in the custody of Attorney General.  And on

3    Count Four, attempted sexual exploitation of a child, I

4    sentence you to 360 months in the custody of the Attorney

5    General.

6              All of these sentences are to run concurrently, so

7    your sentence, effectively, is 420 months in the custody of

8    the Attorney General.  Your supervised release on all four

9    counts is 120 months to run concurrently with each other.

10             I am going to impose certain special conditions.

11             You shall comply with any applicable state and/or

12   federal sex offender registration requirements as instructed

13   by the probation officer, the Bureau of Prisons, any state

14   offender registration agency in the state where you reside,

15   work, or work as a student.

16             You shall comply with orders of restitution and

17   forfeiture imposed by this Court.

18             Upon request you shall provide the Probation

19   Department with full disclosure of your financial records,

20   including comingled income, expenses, assets and liabilities;

21   to include yearly income tax returns.  With the exception of

22   financial accounts reported and noted within the pre-sentence

23   report, you are prohibited from maintaining and/or opening any

24   additional individual and/or joint checking, savings or other

25   financial accounts for either personal or business purposes

Proceedings                                                      53

1   without the knowledge and approval of the Probation

2   Department.

3              You should cooperate with the probation officer in

4   the investigation of your financial dealings and shall provide

5   truthful monthly statements of your income and expenses.

6              You shall cooperate in the signing of any necessary

7   authorization to release information forms permitting the U.S.

8   Probation Department access to your financial information and

9   records.

10             You should not associate with any children under the

11  age of 18 unless a responsible adult is present and you have

12  prior approval from the Probation Department.  If cohabit with

13  an individual who has a minor child, you will inform the other

14  party of your prior criminal history concerning your sex

15  offense.  Moreover, you will notify the party of the

16  prohibitions of associating with any child under the age of 18

17  unless a responsible individual is present.

18             You shall refrain from contacting the victim of the

19  offense unless specific permission is granted by the Probation

20  Department and this Court.  This means that you shall not

21  attempt to meet in person, communicate by letter, telephone,

22  mail, the Internet, or through a third-party without the

23  knowledge and permission of the Probation Department and this

24  Court.

25             You are not to use a computer, Internet-capable

Proceedings                                              54

1  device or similar electronic device to access pornography of

2  any kind.   The term pornography shall include images or video

3  of adults or minors engaged in sexually explicit conduct as

4  that term is defined in 18 United States Code Section 2256(2).

5          You shall not use a computer, Internet-capable

6  device or similar electronic device to view images of naked

7  children.   You shall not use your computer to view pornography

8  or images of naked children stored on related computer media

9  such as CD or DVDs and shall not communicate via your computer

10 with any individual or group that promotes the sexual abuse of

11 children.

12         You shall also cooperate with the U.S. Probation

13 Department's computer and Internet Monitoring Department.

14 Cooperation shall include, but shall not be limited to,

15 identifying computer systems, Internet-capable devices, and/or

16 electronic devices that you have access to and allowing the

17 installation of monitoring software/hardware on said devices

18 at your expense.

19         You shall inform all parties that have access to the

20 monitored computer or similar electronic device that the

21 device is subject to search and monitoring.

22         You may be limited to possessing only one personal

23 Internet-capable device to facilitate the Probation

24 Department's ability to effectively monitor your Internet-

25 related activities.   You shall also permit random examinations

SAM      OCR      RMR      CRR      RPR

Proceedings                                          55

1    of such computer systems, Internet-capable devices, similar

2    electronic devices and related computer media, such as CDs,

3    under your control.

4          You shall report to the probation office any and all

5    electronic communication, service accounts, used for user

6    communications, dissemination or storage of digital media

7    files.  This includes, but not limited to, e-mail accounts,

8    social media accounts, cloud storage accounts.  You shall

9    provide each account identifier and password and shall report

10   the creation of new accounts, changes in identifiers and/or

11   passwords, transfers, suspension or deletion of any account

12   within five days of such action.  Failure to provide accurate

13   account information may be grounds for revocation of release.

14         You shall permit the probation office to access and

15   search any accounts using your credentials pursuant to this

16   condition only when reasonable suspicion exists that you have

17   violated a condition of your supervision and the account to be

18   searched contains evidence of this violation.  Failure to

19   submit to a search may be grounds for revocation of release.

20         You shall participate in mental health treatment

21   program, which may include participation in a treatment

22   program for sexual disorders as approved by the Probation

23   Department.  You shall contribute to the cost of such services

24   rendered and/or any psychotropic medications prescribed to the

25   degree you are reasonably able, and shall cooperate in

Proceedings                                    56

1    securing any applicable third-party payment.

2            You shall disclose all financial information and

3    documents to the Probation Department to assess your ability

4    to pay.  As part of the treatment program for sexual

5    disorders, you will participate in a polygraph examination to

6    obtain information necessary to establish risk management and

7    correctional treatment.

8            You shall submit your person, property, house,

9    residence, vehicle, papers, computers, other electronic

10   communications or data storage devices or media or office to a

11   search conducted by a United States probation officer.

12   Failure to submit to a search may be grounds for revocation of

13   release.

14           You shall warn any other occupants of the premises

15   that they may be subject to searches pursuant to this

16   condition.  An officer may conduct a search pursuant to this

17   condition only when reasonable suspicion exists that you have

18   violated a condition of your supervision and that the areas to

19   be searched contain evidence of this violation.  Any search

20   must be conducted at a reasonable time and in a reasonable

21   manner.

22           There is a $400 special assessment, which is

23   mandatory.  You are subject to a forfeiture provision and to

24   restitution.

25           The defense has asked for a hearing on the

Proceedings                                        57

1    restitution issue, correct?

2              MS. DOLAN:  Yes.

3              THE COURT:  I will set a hearing date for the

4    restitution issue.  If the parties agree to an amount of

5    restitution, which is mandatory, but an amount, prior to such

6    a hearing, you should advise the Court of that agreement.  And

7    the forfeiture provision is for the two cell phones.

8              Is that right?

9              MS. CASTRO:  That's correct, Your Honor.

10             THE COURT:  Ms. Orenstein?

11             MS. ORENSTEIN:  Yes, Your Honor.  We can hand up a

12   proposed order of forfeiture now.

13             THE COURT:  Have you shown it to the defense?

14             MS. DOLAN:  Wait.  I just object.  I literally

15   received this as a walked in.  So I would just say that I

16   think under Riley and Carpenter, I would like to make the

17   argument that, you know, a phone is like a house.  You don't

18   take the whole house just because a crime is committed in it.

19   We now understand that cell phones are a lot more than just

20   that.

21             So I think it's academic, but I would like to put it

22   on the record that we object to the forfeiture.

23             THE COURT:  All right.

24             MS. ORENSTEIN:  Let me say that Ms. Dolan received a

25   copy of it a good 15 minutes before we started.

Proceedings                                         58

1          THE COURT:  Well, she's been busy, but she's made

2     her objection.

3          MS. DOLAN:  Thank you.

4          THE COURT:  And the objection is on the record.

5          MS. ORENSTEIN:  Thank you, Your Honor.

6          THE COURT:  I will consider it.  I am not going to

7     rule on it now.

8          MS. DOLAN:  Actually, I didn't even walk into the

9     courtroom until 5 minutes before, whatever.

10         THE COURT:  Whatever.

11         MS. DOLAN:  Thank you.

12         THE COURT:  The fact is I am not going to act on it

13    now.  If you wanted to put something in writing --

14         MS. DOLAN:  Thank you.

15         THE COURT:  You can do so within seven days.

16         MS. DOLAN:  Thank you.

17         THE COURT:  And the parent of the victim did submit

18    a report of the amount of restitution that they are claiming,

19    right --

20         MS. CASTRO:  That's correct, Your Honor.

21         THE COURT:  -- Ms. Castro?

22         I think it is about $40,000, is it not?

23         MS. DOLAN:  I believe it's 50 U.S., in there,

24    thereabouts.

25         MS. CASTRO:  50,391 U.S. dollars.

Proceedings                                    59

1          THE COURT:  Okay, 50,000.

2          So I will set a date for a hearing.  You do a lot of

3     traveling, so --

4          MS. DOLAN:  I am going to miss a plane actually

5     right now, so if I could be allowed --

6          THE COURT:  We are about to finish.

7          MS. DOLAN:  If I could be in touch with Mr. Reccoppa

8     and the Government about a date?

9          THE COURT:  Yes.

10         MS. DOLAN:  Thank you.

11         THE COURT:  I would like to do it soon because I

12    want to issue a judgment here in the immediate future.

13         I am not imposing a fine, as restitution is a

14    priority.  And before I discuss appeal, is there anything else

15    from the Government?

16         MS. CASTRO:  No, Your Honor.

17         THE COURT:  Anything else from you?

18         MS. DOLAN:  Nothing further, thank you.

19         THE COURT:  All right.

20         Mr. Price, you have the right to appeal your -- you

21    may sit.  You have the right to appeal your conviction and

22    sentence to the United States Court of Appeals for the Second

23    Circuit.  Your time to appeal is extremely limited.  You

24    should discuss with your attorney at once whether you wish to

25    appeal and whether an appeal would be worthwhile.  You have

```
                         Proceedings                    60
```

1   14 days from the date of the judgment.  I think it's the

2   judgment.

3          MS. CASTRO:  Yes, Your Honor.

4          THE COURT:  The judgment.

5          MS. MERKL:  Entry of judgment.

6          THE COURT:  Entry of judgment to file a notice of

7   appeal.

8          Do you understand your right to appeal?

9          THE DEFENDANT:  Yes, I do.

10         THE COURT:  And, Ms. Dolan, you will discuss the

11  defendant's right to appeal with him immediately?

12         MS. DOLAN:  I've already discussed it, and we do

13  intend to file a notice.

14         THE COURT:  Okay, very good.  Please do it timely.

15         MS. DOLAN:  Yes, of course.

16         THE COURT:  Is there anything today from the

17  Government?

18         MS. CASTRO:  No, Your Honor.

19         THE COURT:  Anything else from the defense?

20         MS. DOLAN:  No, thank you.

21         THE COURT:  All right, we are adjourned.

22         MS. MERKL:  Thank you, Your Honor.

23

24         (Matter adjourned.)

25

              SAM    OCR    RMR    CRR    RPR
I certify the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.
              /s/  Stacy A. Mace    March 15, 2019