UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────
UNITED STATES OF AMERICA

        -against-

SEAN PRICE,

               Defendant.

MEMORANDUM & ORDER
17-CR-301 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is the Government's motion for an order authorizing garnishment of funds from Defendant Sean Price's inmate trust account to satisfy his outstanding restitution balance of $4,464.49. (*See* Mot. (Dkt. 164); July 7, 2023 Letter (Dkt. 167) at 1.) The Bureau of Prisons ("BOP") has restrained $5,500 in Price's inmate trust account at the request of the Government. (Mot. at 1.) Price has not responded to the Government's motion despite being given an opportunity to do so. (*See* Apr. 3, 2023 Text Order.) For the reasons set forth below, the Government's motion is GRANTED.

## I. BACKGROUND

The court assumes the parties' familiarity with the factual background and procedural history in this matter and will summarize only those facts relevant to the instant motion.[1]

Defendant Sean Price was convicted at trial of the following: (1) Interstate and Foreign Enticement to Engage in Illegal Sexual Activity, in violation of 18 U.S.C. § 2422(a); (2) Interstate and Foreign Transportation of a Minor to Engage in Illegal Sexual Activity, in violation of 18 U.S.C. § 2423(a); (3) violation of the

---

[1] An account of the underlying facts of this matter can be found in the court's April 13, 2023 Memorandum & Order denying Price's habeas petition under 28 U.S.C. § 2255. (*See* April 13, 2023 M&O (Dkt. 165).)

1

Mann Act, under 18 U.S.C. § 2431; and (4) Attempted Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a). (Apr. 13, 2023 M&O at 2-3.)

At sentencing on December 20, 2018, the court imposed restitution on Price in the amount of $4,374.34 plus interest, due immediately and payable at a rate of $25 per quarter while in custody and 10% of gross monthly income while on supervised release. (*See* Judgment (Dkt. 124) at 9-10.) [2] The court also imposed a special assessment of $400. (*Id.* at 10.) To date, Price has paid $725 toward his Judgment, of which $400 has gone to satisfy the special assessment and $325 has been credited to restitution. (Mot. at 2.) On November 1, 2022, the BOP informed the Government that Price had accumulated $8,241.41 in his inmate trust account. (*Id.*) The Government then asked the BOP to restrain $5,500 of these funds and to leave the rest unencumbered and available for use. (*Id.*) The Government then moved to garnish Price's outstanding restitution balance from the restrained funds in his trust account. (*See generally* Gov't Mot.; July 7, 2023 Letter.)

On June 30, 2023, this court asked the Government to file a supplemental letter detailing: "(1) whether the Defendant has defaulted on his payment obligations; and (2) whether the funds the Government seeks to garnish are attributable to gradual accumulation of prison wages or attributable to a windfall or sudden financial injection(s)." (June 30, 2023 Text Order.) The Government responded on July 7, 2023 that Price defaulted on his restitution order because it was due immediately and remained unsatisfied, and that the funds in his inmate trust account did not contain prison wages. (July 7, 2023 Letter at 2.)

---

[2] As of July 7, 2023, the outstanding amount equaled $4,464.49. (July 7, 2023 Letter at 1.)

The Government further informed the court that the balance of Price's inmate trust account had declined to $6,000. (*Id.* at 1.)

## II. DISCUSSION

### A. Statutory Background

The Attorney General is responsible for collecting unpaid fines and restitutions orders owed to crime victims. *See* 18 U.S.C. § 3612(c). Unless the court provides for payment on certain dates or in installments, monetary penalties such as fines and restitution orders are due immediately and are to be disbursed in the following order:

> (1) A penalty assessment under section 3013 of title 18, United States Code.
>
> (2) Restitution of all victims.
>
> (3) All other fines, penalties, costs, and other payments required under the sentence.

*Id.*; 18 U.S.C. § 3572(d)(1); *see also United States v. Kelly*, 627 F. Supp. 3d 148, 150 (E.D.N.Y 2022).[3]

The Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A *et seq.*, implemented a number of changes regarding collection of restitution amounts owed to crime victims. *See United States v. Norwood*, 49 F. 4th 189, 196 (3d Cir. 2022). This included making restitution orders operate as liens in favor of the Government on all property and rights to property owned by a person fined. *Id.* at 197 (citing 18 U.S.C. § 3613(a), (c)). This category excluded property falling within the exemptions set forth in Section 6334(a)(1)-(8), (10) and (12) of the Internal Revenue Code. 18 U.S.C. § 3613(a)(1); *see also United States v. Jaffe*, 417 F.3d 259, 265 (2d Cir. 2005). The MVRA created a

---

[3] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

new mechanism by which the government could collect outstanding restitutions or fines:

> If a person obligated to provide restitution, or pay a fine, receives *substantial resources* from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed.

18 U.S.C. § 3664(n) (emphasis added).

Inmate trust accounts are not exempted from the reach of § 3664(n). *See* 18 U.S.C. § 3613(a). Indeed, this Section has been used to garnish funds from inmate trust accounts as to satisfy unpaid restitution orders. *See Kelly*, 627 F. Supp. 3d at 150 (citing cases). The Government seeks to do the same here.

### B. Analysis

#### 1. Substantial Resources

The Government argues that the accumulation of periodic deposits in Price's inmate trust account totaling more than $8,000 constitute "substantial resources" under § 3664(n). (Mot. at 4-5.) In *United States v. Sabato*, the court found $4,000 in the defendants' inmate trust account met this threshold. No. 02-CR-236 (VLB), 2021 WL 826751, at *3 (D. Conn. Mar. 4, 2021); *see also Kelly*, 627 F. Supp. 3d at 151 (finding $28,328.24 in the defendant's inmate trust account to be "substantial resources"). Stimulus payments totaling approximately $2,000 deposited into an inmate trust account have also been deemed substantial resources. *See United States v. Schwartz*, No. 20-CR-6033 (FPG), 2022 WL 537621, at *2 & n.2 (W.D.N.Y. Feb. 23, 2022); *United States v. Kendrick*, No. 10-CR-6096 (FPG), 2022 WL 1819390, at

4

*3-5 (W.D.N.Y. June 3, 2022). The court agrees with the Government that more than $8,000 is indeed "substantial resources."[4]

### 2. Applicability of § 3664(n) to Prison Wages

Section 3664(n) authorizes seizure of substantial resources "from any source, including inheritance, settlement, or other judgment." 18 U.S.C. § 3664(n). At first glance, the term "any source" appears to imply that the origin of the funds is irrelevant. But the Fifth, Sixth, Eighth, and Ninth Circuits have found that prison wages gradually accumulated in an inmate trust account cannot constitute "substantial resources" for § 3664(n) purposes. *See United States v. Hughes*, 914 F.3d 947, 951 (5th Cir. 2019) ("We do not think the gradual accumulation of prison wages constitutes 'substantial resources' such that it fits within § 3664(n)'s ambit; rather we think this provision refers to windfalls or sudden financial injections."); *United States v. Carson*, 55 F.4th 1053, 1057 (6th Cir. 2022) ("[S]ection 3664(n) covers payments from outside sources, *not* gradually accumulated prison wages."); *United States v. Kidd*, 23 F.4th 781, 787 (8th Cir. 2022) ("[W]e agree with the Fifth and Ninth Circuits that § 3664(n) does not apply to prison wages."); *United States v. Poff*, 781 F. App'x 593, 595 (9th Cir. 2019) (Summary Order) ("To the extent any of [the defendant's] $2,663.05 account balance is comprised of accumulated prison wages, we agree with the Fifth Circuit that those funds do not qualify under § 3664(n)."); *see also United States v. Ware*, No. 11-CR-224, 2022 WL 18024207, at *2 (D.N.J. Dec. 30, 2022) ("The Court finds the reasoning of the Fifth, Eighth, and Ninth Circuits persuasive and also finds that Section 3664(n) does not apply to prison wages.").

---

[4] This remains true at the current balance of Price's inmate trust account, approximately $6,000.

5

Looking to the text of § 3664(n), the Fifth Circuit in *Hughes* concluded that "this provision refers to windfalls or sudden financial injections[,]" because the examples listed in § 3664(n)—"[i]nheritance, settlement, or other judgment"—are all singular lump-sum payments. 914 F.3d at 951 (quoting 18 U.S.C. § 3664(n)). Writing in agreement with *Hughes*, the Ninth Circuit in *Poff* invoked the *noscitur a sociis* and the surplusage canons to argue that Section § 3664(n) only reached "one-time, lump-sum payment[s]—a category that would not include . . . prison wages" and that "Congress would not have included those three examples if it intended § 3664(n) to apply more broadly." 781 F. App'x at 594-95 (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176, 195 (2012)).[5] The court agrees with the textual analysis of § 3664(n) articulated in *Hughes* and *Poff*.

There are also significant policy concerns related to garnishing funds obtained through prison wages. As the Tenth Circuit articulated in *Kidd*:

> [W]ithdrawing prison wage payments made into inmates' Commissary and Inmate Deposit accounts at the behest of prosecutors could significantly threaten prison security and administration by hurting inmate morale, discouraging inmates from gaining the benefits of prison work, and interfering with the BOP's carefully constructed Inmate Financial Responsibility Program that includes provisions for paying restitution obligations while incarcerated.

23 F.4th at 787. The BOP also estimates that inmates who "worked in prison industries" were 24% less likely to recidivate

---

[5] One-time stimulus payments fit more comfortably into this list. *See, e.g., Schwartz*, 2022 WL 537621, at *2 (classifying a $2,000 lump-sum "Economic Impact Payment" to constitute substantial resources); *Kendrick*, 2022 WL 1819390, at *3-5 (upholding seizure of "two economic impact payments (*i.e.* stimulus checks) totaling $1,800" under § 3664(n)).

and 14% more likely to be gainfully employed following release from prison. Program Details, Bureau of Prisons, https://www.bop.gov/inmates/custody_and_care/unicor_about.jsp (last accessed June 29, 2023). Courts should thus be reticent to further disincentivize participation in such work programs by making wages paid into inmate trust accounts garnishable at will by the Government. Further, the going hourly rate for inmates who work ranges from $0.12 to $0.40, leaving inmates unlikely to discharge their full restitution amounts in a timeframe which would allow working to remain worthwhile, and seriously undermining any claim that such payments constitute "substantial resources." *See* Work Programs, Bureau of Prisons, https://www.bop.gov/inmates/custody_and_care/work_programs.jsp (last accessed July 17, 2023).

The Second Circuit has not yet determined whether accumulation of prison wages can create "substantial resources" for § 3664(n) purposes. The court has only identified one instance of a district court in this Circuit addressing the issue, *United States v. Sabato*. There, after noting the Fifth and Ninth Circuit's conclusions that prison wages were not "substantial resources" for § 3664(n) purposes, the court asked the government to specify whether the funds in the defendant's inmate trust account were "the product of gradual accumulation of prison wages or a windful/sudden financial injection[.]" 2021 WL 826751, at *1-3. The court ultimately allowed the government to garnish the defendant's inmate trust account after finding that "the vast majority of the funds came from a third-party." *Id.* at *3.

The court adopts a similar procedure here. The Government's initial motion did not address whether Price's inmate trust account contained wages from a prison job. The court then asked the Government to supplement the record. (June 3, 2023 Text Order.) Writing on July 7, 2023, the Government informed the court that

7

court that Price's inmate trust account did not contain the fruits of paid wages, but was composed largely of periodic deposits made by family members. (July 7, 2023 Letter at 2.) Concerns over garnishing prison wages are thus not apparent here.

### 3. Default as a Precondition to Garnishment

The court also asked the Government to provide additional information on whether Price defaulted on his restitution obligation. The Government now argues that Price is in default by virtue of his restitution being due immediately and remaining outstanding. (July 7, 2023 Letter at 2.)

The court agrees with this contention. The term "due immediately" in Price's Judgment means that the lien created by the restitution order is enforceable in full at any time. *See Schwartz*, 2022 WL 537621, at *2 n.2; ("[T]he Court ordered payment on restitution 'to begin immediately' and stated that restitution 'is due immediately.' Nothing in the payment plan gives the impression that . . . the government would be barred from exercising its statutory authority to enforce the full restitution order."). Where a restitution order does not contain this language and the defendant complied with a payment schedule established in the order, a Judgment cannot be collected in full. *See United States v. Burko*, No. 10-CR-291 (KMK), 2023 WL 3195943, at *3 (S.D.N.Y. May 2, 2023) ("[A]llowing [the Government] to enforce the lien in the absence of a judgment from this Court making [the defendant's] restitution due immediately would render the MVRA's detailed scheme superfluous."); *United States v. Martinez*, 812 F.3d 1200, 1207 (10th Cir. 2015) ("The government has statutory authority to enforce only the terms of a restitution order, not to take an enforcement action that would exceed a restitution order's payment terms."); *Hughes*, 914 F.3d at 947 ("When a restitution order specifies an installment plan, unless there is language directing that the funds are also immediately due, the government cannot attempt to enforce the judgment beyond its

plain terms absent a modification of the restitution order or default on the payment plan.").

Here, the Judgment specified that Price's restitution was "due immediately" and payable at a rate of $25 while in custody and ten percent of gross monthly income while on supervision. (Judgment at 10.) The phrase "due immediately" made the lien created by the restitution order enforceable in full at any time, notwithstanding compliance with the payment schedule. *See Schwartz*, 2022 WL 537621, at 2 n.2. The Government is thus correct that Price is in default.[6]

### III. CONCLUSION

The Government's motion to seize from Price's inmate trust account under § 3664(n) is thus GRANTED. The Government is DIRECTED to provide the court with an updated proposed turnover order, which the court will then issue.

SO ORDERED.

Dated:   Brooklyn, New York
         July 18, 2023

                                          s/Nicholas G. Garaufis
                                          NICHOLAS G. GARAUFIS
                                          United States District Judge

---

[6] The Government argues that default is irrelevant because § 3664(n) was intended to operate as an independent collection mechanism without reference to compliance with or default on a defendant's court-ordered payment schedule. (July 7, 2023 Letter at 2 (quoting *Kelly*, 627 F. Supp. 3d at 152).) But the cases that the Government cites for this proposition—*Kelly* and *Kendrick*—pertain to outstanding *fines*, not outstanding *restitution* orders. *See* 627 F. Supp. 3d at 152; 2022 WL 1819390, at *5.